[L.A. No. 32222. Aug. 18, 1988.]

PARVANEH MORADI-SHALAL, Plaintiff and Appellant, v. FIREMAN'S FUND INSURANCE COMPANIES, Defendant and Respondent.

290

COUNSEL

Olan & Friedman, Linda P. Horner, Bennet Olan, Reish & Luftman and Richard A. Love for Plaintiff and Appellant.

Gage, Mazursky, Schwartz, Angelo & Kussman, Sanford M. Gage, Michael H. Whitehill, Harvey R. Levine, Arne Werchick, Wylie A. Aitken, Glen T. Bashore, Victoria De Goff, Douglas deVries, John Gardenal, Ian Herzog, Peter Hinton, Leonard Sacks and Robert Steinberg as Amici Curiae on behalf of Plaintiff and Appellant.

Haight, Dickson, Brown & Bonesteel, Roy G. Weatherup and David F. Peterson for Defendant and Respondent.

Latham & Watkins, Donald P. Newell, Milton A. Miller, Horvitz, Levy & Amerian, Ellis J. Horvitz, Peter Abrahams, Sharon Munson Swanson, Michael Robert Tyler, Parkinson, Wolf, Lazar & Leo, Richard B. Wolf, Michael W. Connally, Robert M. Blake, Gilbert, Kelly, Crowley & Jennett, William D. Jennett, Patrick A. Mesisca, Jr., and Michael I. D. Mercy as Amici Curiae on behalf of Defendant and Respondent.

## OPINION

**LUCAS, C. J.**—We initially granted review in this case to attempt to resolve some of the widespread confusion that has arisen regarding the application of our opinion in *Royal Globe Ins. Co. v. Superior Court* (1979) 23 Cal.3d 880 [153 Cal.Rptr. 842, 592 P.2d 329]. In *Royal Globe,* the court held that Insurance Code section 790.03, subdivision (h) (a provision of the Unfair Practices Act, Ins. Code, § 790 et seq.), created a private cause of action against insurers who commit the unfair practices enumerated in that provision. (All further statutory references are to the Insurance Code unless otherwise indicated.) ▮▮▮▮ Among the issues raised and argued by counsel and amici curiae, however, is the more basic question whether we should reconsider our holding in *Royal Globe.*[1]

In light of certain developments occurring subsequent to *Royal Globe* which call into question its continued validity, we have found it appropriate to reexamine that decision. As will appear, we have concluded that the *Royal Globe* court incorrectly evaluated the legislative intent underlying the passage of section 790.03, subdivision (h), and that accordingly *Royal Globe* should be overruled. We also have concluded, however, that our holding in that regard should be prospective only, that is, applicable only to cases filed after the date our opinion herein becomes final. As for cases pending prior to that time, including the present case, the *Royal Globe* rule shall apply, as construed in part VI of this opinion.

## I. THE FACTS

In this case, plaintiff settled her personal injury suit for damages against defendant's insured, and that suit was dismissed with prejudice. Her subsequent complaint against defendant insurer for violations of section 790.03, subdivisions (h)(2), (3), and (5),[2] alleged the following facts:

---

[1]The dissent herein, observing that defendant did not raise the issue in the lower courts, suggests that we have improperly sought out an opportunity to overrule *Royal Globe.* But clearly it was pointless for defendant to ask either the trial or appellate court to overrule one of our decisions. The original petition for review squarely raised the point, and we never narrowed the issues to exclude it. (See rule 29.2(b), Cal. Rules of Court.) Accordingly, the *Royal Globe* issue is properly before us.

[2]Section 790.03 reads in relevant part: "The following are hereby defined as unfair methods of competition and unfair and deceptive acts or practices in the business of insurance.

In July 1983, plaintiff was injured in an automobile accident in which a vehicle driven negligently by defendant's insured struck her vehicle. In April 1984, plaintiff's attorneys wrote to defendant, submitting evidence of damages incurred by plaintiff as a result of the accident, and requesting settlement of the claim against its insured. On June 6, 1984, having received no acknowledgement or response to their letter, plaintiff's attorneys again wrote defendant requesting settlement of the claim and notifying it that plaintiff was reserving her rights of action against defendant under *Royal Globe*. Plaintiff sued the insured on June 21, 1984. In September, five months after her first communication to defendant, plaintiff settled the action against the insured. (According to the representations of counsel at oral argument, the settlement amount was $1,800 less than plaintiff's original demand.) Plaintiff's action against the insured was dismissed with prejudice.

Thereafter, plaintiff brought suit against defendant under *Royal Globe,* based on its alleged refusal to promptly and fairly settle her claim against the insured. In her first amended complaint against defendant, plaintiff alleged defendant "did not acknowledge or act upon [her attorneys'] communication, did not promptly investigate or process the claim, and did not attempt in good faith to effectuate a prompt, fair, and equitable settlement of the claim, in which liability was reasonably clear." She sought compensatory damages according to proof and $750,000 in punitive damages. The trial court sustained defendant's general demurrer without leave to amend, based on its conclusion that the absence of a final judgment in the underlying action precluded a *Royal Globe* action against defendant.

The Court of Appeal reversed, holding that settlement coupled with a dismissal with prejudice was a sufficient conclusion of the underlying action to support a subsequent *Royal Globe* action against defendant. In part VI hereof, we review the correctness of that holding within the constraints of *Royal Globe*. First, however, we reconsider the validity of the *Royal Globe* holding itself.

---

".  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"(h) Knowingly committing or performing with such frequency as to indicate a general business practice any of the following unfair claims settlement practices:

".  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"(2) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies.

"(3) Failing to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under insurance policies.

".  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"(5) Not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear."

## II. THE ROYAL GLOBE DECISION

In *Royal Globe,* a bare majority of the court held that under section 790.03, subdivisions (h)(5) and (14),[3] a private litigant could bring an action to impose civil liability on an insurer for engaging in unfair claims settlement practices. (23 Cal.3d at pp. 885-888.) The court further held (*id.,* at pp. 888-890) that such an action could be brought against the insurer by either the insured or a third party claimant, that is, "an individual who is injured by the alleged negligence of an insured" (*id.,* at p. 884). The court ruled that subdivisions (h)(5) and (14) imposed on the insurer a duty owed directly to the third party claimant, separate from the duty owed to the insured. (*Id.,* at p. 890.) To support its holding, the court relied primarily on section 790.09, which provides that cease and desist orders issued by the Insurance Commissioner under the Unfair Practices Act shall not "relieve or absolve" an insurer from any "civil liability or criminal penalty under the laws of this State arising out of the methods, acts or practices found unfair or deceptive." (*Id.,* at pp. 885-886.)

In addition, the *Royal Globe* court interpreted the foregoing provisions as conferring on the injured claimant a cause of action arising from a *single instance* of unfair conduct, so that a plaintiff did not have to prove that the insurer committed the acts prohibited by the statute as a general business practice. Despite the fact that section 790.03, subdivision (h), proscribes "[k]nowingly committing or performing with such frequency as to indicate a general business practice" the various specified unfair claims-settlement practices, the *Royal Globe* majority held that "a single violation knowingly committed is a sufficient basis for such an action." (23 Cal.3d at p. 891.)

The *Royal Globe* court concluded by holding that the plaintiff may not sue both the insured and the insurer in the same action, and that the suit against the insurer must be "postponed until the liability of the insured is first determined . . . ." (23 Cal.3d at pp. 891-892.) The court observed that any damages suffered by the injured party as a result of the insurer's misconduct "may best be determined after the conclusion of the action by the third party claimant against the insured." (*Id.,* at p. 892.)

Justice Richardson's dissent (joined by Justices Clark and Manuel) disputed most of the majority's conclusions. In the dissent's view, nothing in the language of sections 790.03 or 790.09 either created or authorized a private action by anyone against the insurer for bad faith refusal to settle a claim. The dissent pointed out that if the Legislature truly had intended to grant third party claimants a private cause of action against an insurer for failing to settle claims against the insured, "then surely much more direct

---

[3]Subdivision (h)(14) includes as an unfair practice "[d]irectly advising a claimant not to obtain the services of an attorney."

and precise language would have been selected" than the language of section 790.09 to the effect that administrative proceedings under the act would not "relieve or absolve" an insurer from civil liability "under the laws of this State." (23 Cal.3d at p. 896.) As the dissent noted, "one would reasonably have expected that the Legislature simply would have directly imposed such liability in clear, understandable, unmistakable terms, as it has done in numerous other statutes." (*Ibid.*) The dissent observed that an amicus curiae brief submitted in *Royal Globe* by the California Insurance Commissioner, and containing the available legislative history, supported the view that the framers of the act "had no intent to create a private cause of action." (23 Cal.3d at p. 897.)

The dissent also pointed out that the majority's creation of a cause of action in favor of the third party claimant was contrary to our then recent unanimous opinion in *Murphy* v. *Allstate Ins. Co.* (1976) 17 Cal.3d 937, 941 [132 Cal.Rptr. 424, 553 P.2d 584], holding that the insurer's duty to settle runs solely to the *insured* and not to the injured third party. (*Royal Globe, supra,* 23 Cal.3d at pp. 892-893.) As Justice Richardson explained, "California has consistently held that the duty to settle *runs to the insured.* Section 790.03, subdivision (h), creates neither a new *independent* duty nor civil liability which may be extended beyond the insured to *third parties.*" (*Id.,* at pp. 895-896, italics in original.)

The dissent distinguished the three Court of Appeal decisions, relied on by the *Royal Globe* majority, which had found or acknowledged private causes of action implied in the statute. (*Homestead Supplies, Inc.* v. *Executive Life Ins. Co.* (1978) 81 Cal.App.3d 978, 992 [147 Cal.Rptr. 22] (Kaufman, J.); *Shernoff* v. *Superior Court* (1975) 44 Cal.App.3d 406, 409 [118 Cal.Rptr. 680]; *Greenberg* v. *Equitable Life Assur. Society* (1973) 34 Cal.App.3d 994, 1001 [110 Cal.Rptr. 470]; see *Royal Globe, supra,* 23 Cal.3d at pp. 885-887 [maj. opn.], 897-898 [dis. opn.].) Neither *Greenberg* nor *Shernoff* involved any of the unfair practices listed in subdivision (h) of section 790.03; moreover, *Homestead* merely acknowledged that the earlier two cases had imposed civil liability for some violations of the act, but did not itself address that issue further.

The dissent also criticized the majority for holding that a single act of misconduct could constitute a violation of section 790.03. The dissent noted that section 790.03, subdivision (h), expressly refers to the commission of unfair settlement practices "with such frequency as to indicate a general business practice . . . ." In the dissent's view, "By adopting subdivision (h) of section 790.03, the Legislature had no intent to create any civil liability *to anyone* for the acts specified in that subdivision. Rather, such acts were to be considered unfair practices subject to *administrative* regulation and

discipline and then only if committed with the requisite frequency." (23 Cal.3d at p. 895, italics in original.)

Justice Richardson concluded his dissent with these prophetic words: "It seems predictable that in almost every case in which an insurer hereafter declines a settlement offer the injured third party claimant will be tempted to file an independent action against the carrier despite the clear admonition in our recent unanimous *Murphy* decision that the insurer's duty to settle runs to the *insured* and *not* to the *injured party.* [¶] The gratuitous creation of such a new remedy is wholly inconsistent both with our own firmly established California precedent, and with a fair and reasoned analysis of the applicable legislation." (23 Cal.3d at p. 898, italics in original.)

## III. STARE DECISIS

Before examining various recent developments pertinent to our reconsideration of *Royal Globe,* we briefly review certain well-established principles governing the respect we confer upon prior opinions of this court. ■ It is, of course, a fundamental jurisprudential policy that prior applicable precedent usually must be followed even though the case, if considered anew, might be decided differently by the current justices. This policy, known as the doctrine of stare decisis, "is based on the assumption that certainty, predictability and stability in the law are the major objectives of the legal system; i.e., that parties should be able to regulate their conduct and enter into relationships with reasonable assurance of the governing rules of law." (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 758, p. 726, and see cases cited.)

■ It is likewise well established, however, that the foregoing policy is a flexible one which permits this court to reconsider, and ultimately to depart from, our own prior precedent in an appropriate case. (*Id.,* § 759, and cases cited.) As we stated in *Cianci* v. *Superior Court* (1985) 40 Cal.3d 903, 924 [221 Cal.Rptr. 575, 710 P.2d 375], "[a]lthough the doctrine [stare decisis] does indeed serve important values, it nevertheless should not shield court-created error from correction." (Accord, *People* v. *Guerrero* (1988) 44 Cal.3d 343, 356 [243 Cal.Rptr. 688, 748 P.2d 1150]; *People* v. *Anderson* (1987) 43 Cal.3d 1104, 1147 [240 Cal.Rptr. 585, 742 P.2d 1306]; *County of Los Angeles* v. *Faus* (1957) 48 Cal.2d 672, 679 [312 P.2d 680].) In *Anderson,* Justice Mosk noted the need for flexibility in applying stare decisis, stating, "This is especially so when, as here, the error [in the prior opinion] is related to a 'matter of continuing concern' to the community at large. (*United States* v. *Reliable Transfer Co.* (1975) 421 U.S. 397, 409, fn. 15 [44 L.Ed.2d 251, 261, 95 S.Ct. 1708].)" (*Anderson, supra,* 43 Cal.3d at p. 1147; see also *Monell* v. *New York City Dept. of Social Services* (1978) 436 U.S.

658, 695 [56 L.Ed.2d 611, 638, 98 S.Ct. 2018] [stare decisis not mechanically applied to prohibit overruling prior decisions interpreting statutes].)

*Anderson* also recognized that reexamination of precedent may become necessary when subsequent developments indicate an earlier decision was unsound, or has become ripe for reconsideration. (43 Cal.3d at pp. 1138-1141.) For example, in *Anderson* we found that intervening changes in federal constitutional law demonstrated the unsoundness of some of the underlying premises supporting our earlier decision in *Carlos* v. *Superior Court* (1983) 35 Cal.3d 131 [197 Cal.Rptr. 79, 672 P.2d 862]. As we explain below, developments occurring subsequent to our *Royal Globe* decision convince us that it was incorrectly decided, and that it has generated and will continue to produce inequitable results, costly multiple litigation, and unnecessary confusion unless we overrule it.

## IV. SUBSEQUENT DEVELOPMENTS

A. *Rejection by Other State Courts*—We decided *Royal Globe* in 1979. Since then, the courts of other states have largely declined to follow our *Royal Globe* analysis. The California Unfair Practices Act was derived from the National Association of Insurance Commissioners' Model Unfair Claims Practices Act, which has been adopted by 48 states. Defendant and an amicus curiae observe that the courts in 19 states other than California have faced the issue whether their versions of the model act created a private cause of action. The courts in 17 of these 19 states have refused to recognize such a cause of action, either expressly rejecting the *Royal Globe* analysis, or interpreting statutory language similar to sections 790.03, subdivision (h), and 790.09 in a manner contrary to *Royal Globe* without mentioning that case.

Thus, the courts in eight states have expressly acknowledged, but declined to follow, *Royal Globe,* [4] and the courts in nine states have implicitly rejected its holding.[5] Indeed, only two states other than California recognize

[4] (See *White* v. *Unigard Mut. Ins. Co.* (1986) 112 Idaho 94 [730 P.2d 1014, 1020-1021]; *Scroggins* v. *Allstate Ins. Co.* (1979) 74 Ill.App.3d 1027 [393 N.E.2d 718, 723-725]; *Seeman* v. *Liberty Mut. Ins. Co.* (Iowa 1982) 322 N.W.2d 35, 40-43; *Earth Scientists* v. *United States Fidelity & Guar.* (D. Kan. 1985) 619 F.Supp. 1465, 1470-1471; *Tweet* v. *Webster* (D.Nev. 1985) 610 F.Supp. 104, 105; *Patterson* v. *Globe American Cas. Co.* (1984) 101 N.M. 541 [685 P.2d 396, 397-398]; *A&E Supply Co.* v. *Nationwide Mut. Fire Ins. Co.* (4th Cir. 1986) 798 F.2d 669, 673-675 [Va. law]; *Kranzush* v. *Badger State Mut. Cas. Co.* (1981) 103 Wis.2d 56 [307 N.W.2d 256, 269].)

[5] (See *Young* v. *Michigan Mut. Ins. Co.* (1984) 139 Mich.App. 600 [362 N.W.2d 844, 846-847]; *Morris* v. *American Family Mut. Ins. Co.* (Minn. 1986) 386 N.W.2d 233, 234-238; *Lawton* v. *Great Southwest Fire Ins. Co.* (1978) 118 N.H. 607 [392 A.2d 576, 581]; *Farris* v. *U. S. Fidelity and Guaranty Co.* (1978) 284 Ore. 453 [587 P.2d 1015, 1018-1023]; *D'Ambrosio* v. *Pa. Nat. Mut. Cas. Ins. Co.* (1981) 494 Pa. 501 [431 A.2d 966, 969-970]; *Swinton* v. *Chubb & Son, Inc.* (1984) 283 S.C. 11 [320 S.E.2d 495, 496-497]; *Russell* v. *Hartford Cas. Ins. Co.*

a statutory cause of action for private litigants, and the courts in those states have rejected *Royal Globe*'s conclusion that a single violation of the statute is a sufficient basis for a suit for damages.[6]

A recent holding by the Minnesota Supreme Court is typical of the majority approach to the question whether state legislation based upon the model act confers a private right of action against insurers. (*Morris* v. *American Family Mut. Ins. Co., supra,* 386 N.W.2d 233.) The *Morris* court observed that the Minnesota act "deals with administrative regulation of insurance practices by the Commissioner of Commerce and says nothing about a private person having a right to sue the insurer for a violation. The Model Act was not intended to create a private action. . . . [Citation.] *The great majority of state versions of the Model Act have been held not to create a private cause of action.* [Citation.] The savings clause . . . (*i.e.,* no order of the commissioner or the court relieves an insurer from any liability 'under any other laws') does not create any new cause of action . . . ." (*Id.,* at p. 235, italics added.)

It is true that the statutes of the various states whose courts have rejected a private cause of action do not contain precisely the same language as sections 790.03 and 790.09 of the California statute, but in most instances the differences are slight. Accordingly, the clear consensus of these out-of-state cases strongly calls into question the validity of our statutory analysis in *Royal Globe*. The dissent herein acknowledges that other states have reached conclusions contrary to *Royal Globe,* but simply dismisses those cases as "wholly irrelevant." (*Post,* p. 320.) ■ Although holdings from other states are not controlling, and we remain free to steer a contrary course, nonetheless the near unanimity of agreement by courts considering very similar statutes, all based on the same model act, indicates we should question the advisability of continued allegiance to our minority approach.

B. *Scholarly Criticism*—Commentary on *Royal Globe* has been generally critical of that decision. (See, e.g., Note, *Rodriguez* v. *Fireman's Fund Insurance Companies, Inc.: An Illustration of the Problems Inherent in the Royal Globe Doctrine* (1985) 15 Sw.U.L.Rev. 371; Note, *Bad Faith: Defining Applicable Standards in the Aftermath of Royal Globe* v. *Superior Court* (1983) 23 Santa Clara L.Rev. 917; Allen, *Insurance Bad Faith Law : The Need for Legislative Intervention* (1982) 13 Pacific L.J. 833, 843; Comment, *Liability Insurers and Third-Party Claimants: The Limits of Duty* (1981) 48 U.Chi.L.Rev. 125, 148-151; Comment, *Liability to Third Parties*

---

(Tex. Civ. App. 1977) 548 S.W.2d 737, 742 [writ ref. N.R.E.]; *Wilder* v. *Aetna Life & Cas. Ins. Co.* (1981) 140 Vt. 18 [433 A.2d 309, 310]; *Tank* v. *State Farm Fire & Cas. Co.* (1984) 38 Wn.App. 438 [686 P.2d 1127, 1132].)

[6](See *Klaudt* v. *Flink* (1983) 202 Mont. 247 [658 P.2d 1065, 1068]; *Jenkins* v. *J. C. Penney Cas. Ins. Co.* (W.Va. 1981) 280 S.E.2d 252, 259-260.)

*for Economic Injury: Privity as a Useful Animal, or a Blind Imitation of the Past* (1981) 12 Sw.U.L.Rev. 87, 111-118, 125-127; Price, *Royal Globe Insurance Company v. Superior Court: Right to Direct Suit Against an Insurer by a Third Party Claimant* (1980) 31 Hastings L.J. 1161, 1176-1187; Note, *Extending the Liability of Insurers for Bad Faith Acts: Royal Globe Insurance Company v. Superior Court* (1980) 7 Pepperdine L.Rev. 777, 791-793.)

These articles emphasize both the erroneous nature of our holding (i.e., the strained interpretation of the statutory provisions, and the misreading or disregard of available legislative history) and the undesirable social and economic effects of the decision (i.e., multiple litigation, unwarranted bad faith claims, coercive settlements, excessive jury awards, and escalating insurance, legal and other "transaction" costs).

Although we will later address some of these practical concerns in greater detail (see pt. IV.E), we observe here that the breadth of the criticism leveled at *Royal Globe* is disturbing and, like the flood of contrary decisions of other state courts, is pertinent to our determination whether or not to reconsider that decision. (See, e.g., *Cianci v. Superior Court, supra,* 40 Cal.3d 903, 921 [scholarly criticism justified reexamination of prior decision "to determine its continuing viability"].)

C. *1980 Report of the National Association of Insurance Commissioners (N.A.I.C.)*—As previously indicated, the California act was a slightly modified version of the N.A.I.C.'s Model Unfair Claims Practices Act. Section 790.03, subdivision (h), was derived from similar language in a 1971 amendment to section 9 of the model act. That amendment made it an unfair claims-settlement practice to commit "any of the following acts, if done without just cause and if performed with such frequency as to indicate a general business practice: [listing the various unfair acts, including not attempting in good faith to reach prompt, fair settlements]."

According to an amicus curiae brief filed herein, a 1980 report of the N.A.I.C., written after our *Royal Globe* decision, recites that although some proposals had been made in 1971 to create a private right of action, the advisory committee recommended against including such a provision, and indeed one proposal which would have created such a cause of action was deleted from the draft model act. In the words of the 1980 N.A.I.C. report, "The 1971 Model Act does not contain an individual right of action provision . . . ." (2 N.A.I.C. Proceedings (1980) 345-346.)

Neither plaintiff nor the amici curiae in her support challenge the foregoing factual recitals. We find the N.A.I.C. report instructive regarding the intent of the framers of the model act on which the California act was based.

D. *Additional Legislative History*—One of the articles previously cited contains some additional legislative history not mentioned in either the majority or dissenting opinions in *Royal Globe*. According to the article, the representations of which are not contradicted by plaintiff or her amici curiae, the proposed legislation creating section 790.03 was examined by the state's Legislative Analyst, whose report described the bill as contemplating only *administrative* enforcement by the Insurance Commissioner. In addition, the Legislative Counsel's digest accompanying the proposed bill likewise described it as calling for *administrative* enforcement; no mention was made of a possible private civil remedy. (Price, *supra,* 31 Hastings L.J. 1161, 1178-1179.) ■ The fact that neither the Legislative Analyst nor the Legislative Counsel observed that the new act created a private right of action is a strong indication the Legislature never intended to create such a right of action. (See *People* v. *Anderson, supra,* 43 Cal.3d at p. 1143; *Heckendorn* v. *City of San Marino* (1986) 42 Cal.3d 481, 486 [229 Cal.Rptr. 324, 723 P.2d 64].)

■ In addition, some "subsequent" legislative history is available to guide our determination. Shortly after *Royal Globe* was decided, the Legislature attempted to abrogate our holding. Senate Bill No. 483, introduced in May 1979, provided that a violation of section 790.03, subdivision (h), would not impose civil liability on any insurer; the bill's declared intent was to overrule *Royal Globe*. The bill was passed by the Senate and referred to the Assembly, but it became "stalled" in the Ways and Means Committee and was never voted on by the Assembly.

Contrary to plaintiff's characterization, the Legislature did not "reject" Senate Bill No. 483, or otherwise demonstrate its "approval" of *Royal Globe*. Indeed, the Senate, the only legislative body to vote on the question, agreed that the case should be abrogated. We decline to hold that failure of the bill to reach the Assembly floor is determinative of the intent of the Assembly as a whole that the proposed legislation should fail.

■ Moreover, even were we to view the foregoing events as evidencing a "rejection" of the bill, we could not characterize that rejection as an affirmative acceptance of the *Royal Globe* holding. As we recently stated in *Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1396 [241 Cal.Rptr. 67, 743 P.2d 1323], "[s]imilarly inconclusive is the Legislature's rejection of special provisions which would have expressly allowed the award of damages. Unpassed bills, as evidences of legislative intent, have little value. [Citations.]"

Plaintiff observes, however, that in 1983 the Legislature modified section 790.03 in certain unrelated respects without changing subdivision (h) or addressing the *Royal Globe* issue. According to plaintiff, such legislative

failure to act indicates acquiescence with the prior law. (See *Estate of McDill* (1975) 14 Cal.3d 831, 837-838 [122 Cal.Rptr. 754, 537 P.2d 874].) But as we later confirmed in *Cianci* v. *Superior Court, supra,* 40 Cal.3d 903, 923, where a similar argument was made, " '. . . something more than mere silence should be required before that acquiescence is elevated into a species of implied legislation . . . .' [Citation.] Here there is nothing more than mere silence." (Fn. omitted.) Likewise, in the present case, the Legislature may have passively acquiesced in *Royal Globe,* but it has never expressly or impliedly adopted the holding in that case. As *Cianci* indicates, under such circumstances we are free to reexamine our prior holding.

We conclude that the foregoing legislative history, although somewhat inconclusive, nonetheless casts considerable doubt upon the correctness of *Royal Globe*'s interpretation of legislative intent.

E. *Adverse Consequences*—Although we are not in a position to verify the accuracy of each of their observations, the commentators who have focused on *Royal Globe* suggest our holding has had several adverse social and economic consequences.

Confirming Justice Richardson's prediction in his *Royal Globe* dissent, several commentators have observed that the rule in that case promotes multiple litigation, because its holding contemplates, indeed encourages, two lawsuits by the injured claimant: an initial suit against the insured, followed by a second suit against the insurer for bad faith refusal to settle. (Comment, *supra,* 12 Sw.U.L.Rev. at p. 125; Price, *supra,* 31 Hastings L.J. at p. 1186.) As a corollary, *Royal Globe* may tend to encourage unwarranted settlement demands by claimants, and to coerce inflated settlements by insurers seeking to avoid the cost of a second lawsuit and exposure to a bad faith action. (Price, *supra,* 31 Hastings L.J. at pp. 1186-1187; Note, *supra,* 7 Pepperdine L.Rev. at pp. 790-791; Allen, *supra,* 13 Pacific L.J. at p. 851.)

Thus, one author observed, "One result of this decision is that every time a demand is now made to settle a lawsuit, an additional demand is likely to be forthcoming to coerce higher settlements. The demand now carries the threat that, unless settlement is immediate, a separate suit will be filed for violation of the Unfair Practices Act. The public ultimately will be affected by the additional drain on judicial resources. Moreover, the public will indeed suffer from escalating costs of insurance coverage, a certain result of inflated settlements and costly litigation." (Price, *supra,* 31 Hastings L.J. at p. 1186.)

Other commentators agree that *Royal Globe,* and its allowance of a direct action against the insurer, may result in escalating insurance costs to the general public resulting from insurers' increased expenditures to fund coerced settlements, excessive jury awards and increased attorney fees.

(Allen, *supra,* 13 Pacific L.J. at p. 851; Note, *supra,* 7 Pepperdine L.Rev. at pp. 792-793; Note, *supra,* 15 Sw.U.L.Rev. at p. 393.) As stated by one writer, "The increased settlement costs required to settle the actual lawsuit and the potential one that hovers over most litigation involving an insured defendant will obviously result in higher premiums. In addition, those insurers that have the courage to refuse settlement where they do not feel it is warranted will necessarily be the subject of additional litigation because they will not in all instances have guessed correctly regarding the value of the case. When they have guessed incorrectly, *Royal Globe* encourages lawsuits against them." (Allen, *supra,* 13 Pacific L.J. at p. 851.)

Most authors have noted another unfortunate consequence of our holding in *Royal Globe* that insurers owe a direct duty to third party claimants: It tends to create a serious conflict of interest for the insurer, who must not only protect the interests of its insured, but also must safeguard its own interests from the adverse claims of the third party claimant. This conflict disrupts the settlement process and may disadvantage the insured. (Allen, *supra,* 13 Pacific L.J. at p. 851; Price, *supra,* 31 Hastings L.J. at pp. 1183-1184; Note, *supra,* 7 Pepperdine L.Rev. at pp. 791-792; Note, *supra,* 15 Sw.U.L.Rev. at p. 393.)

Finally, several commentators have noted that *Royal Globe* left unanswered many complex questions regarding the practicalities of actions against insurers under section 790.03. As one author observed, our decision failed to (1) explain what constitutes a "bad faith" refusal to abide by the provisions of section 790.03, (2) specify the stage at which the insurer's duty to settle arises, (3) discuss whether mutual good faith obligations are imposed on third party claimants, or (4) anticipate "a host of constitutional problems such as vagueness, the right to a jury trial, and the right to contract." (Note, *supra,* 23 Santa Clara L.Rev. at p. 919; see also *id.,* at pp. 930-939.) The author concludes by observing that "In establishing new law in the area of bad faith, this unprecedented case failed to accomplish its most important goal: to define and direct. As a result, the problems continue to hemorr[h]age and take the form of overaggressive plaintiff claimants that assert the equivocality of the decision in a unilateral declaration of beware—or else. The 'or else' generally translates into a bad faith cause of action. Bad faith, however, is not subject to simple translation or definition, especially in the statutory sense. [¶] . . . Redefinition is desperately needed." (*Id.,* at pp. 944-945; see also Comment, *supra,* 12 Sw.U.L.Rev. at p. 127 ["To try to redefine an area of law after an ill-advised and ill-considered opinion, as the California courts must now do after *Royal Globe,* is a waste of judicial time, energy and money . . . ."].)

Another commentator similarly notes our failure to clarify such issues as "the test of liability, standing to sue, the extent of recoverable damages, the

extent to which *Royal Globe* applies to the various subsections of section 790.03, and other issues." (Allen, *supra,* 13 Pacific L.J. at p. 844, fn. omitted; see also Note, *supra,* 15 Sw.U.L.Rev. at pp. 387-395 [difficulties in applying *Royal Globe* where underlying suit is settled without judicial determination of liability].)

F. *Analytical Difficulties* —As indicated in the foregoing commentary the lower courts have experienced considerable difficulty in attempting to define the scope of the *Royal Globe* cause of action. These difficulties are largely the result of the insufficient guidance afforded by *Royal Globe,* which has forced the lower courts to make quasi-legislative decisions to implement that ruling. Indeed, in addition to the present case, we have granted review in approximately 25 other cases raising a variety of *Royal Globe* issues and reaching a variety of conflicting conclusions. These cases are being held pending our resolution of the present case.

As indicated in part VI hereof, the action before us demonstrates some of the analytical difficulties arising in the context of a third party claim. *Royal Globe* held that a third party claimant may not sue both the insurer and the insured in the same suit, and must await the "conclusion" of the action against the insured before suing the insurer for breach of section 790.03, subdivision (h). (23 Cal.3d at pp. 891-892.) Yet, the lower courts have come to conflicting determinations as to whether a *settlement* can constitute such a "conclusion" of the action for purposes of a *Royal Globe* suit, or whether a prior judicial determination of the insurer's liability is required.

Another area of analytical difficulty concerns the means by which the plaintiff must prove a "pattern" or "general business practice" of unfair settlement practices (see § 790.03, subd. (h)). As previously indicated, the cases from other states *without exception* reject *Royal Globe*'s holding that an action under section 790.03 could be based upon a single wrongful act (23 Cal.3d at pp. 890-891). Such unanimity of disagreement strongly suggests we erred in our contrary holding. Yet, for the reasons stated by the majority in *Royal Globe,* the plaintiffs in these cases (whether insureds or third party claimants) seldom have the ability to prove any widespread pattern of wrongful settlement practices on the part of the insurer. (23 Cal.3d at p. 891.) Although the *Royal Globe* majority believed this proof problem justified its conclusion that a single act will subject the insurer to liability for damages for unfair practices, it is more likely that the majority's initial premise—that a direct action is permitted under section 790.03—was incorrect, and that the provision was instead limited to providing *administrative* sanctions by the Insurance Commissioner, once an investigation revealed such a pattern.

It seems evident that resolution of these issues regarding the application of *Royal Globe* involves a difficult weighing of competing policies. Such a

determination is more properly made by the Legislature. Yet the interpretive difficulties and complex public policy choices arising under *Royal Globe* result solely from its conclusion that the Legislature intended to confer a private right of action for violation of section 790.03. Reconsideration of that decision seems a far better alternative than allowing ourselves to be swept deeper into the developing interpretive whirlpool it has created.

## V. *ROYAL GLOBE* SHOULD BE OVERRULED

■ The points raised by the dissent in *Royal Globe,* as reflected in the cases from other states, the adverse scholarly comment, and the available legislative history, seem irrefutable. Neither section 790.03 nor section 790.09 was intended to create a private civil cause of action against an insurer that commits one of the various acts listed in section 790.03, subdivision (h). The contrary *Royal Globe* holding reportedly has resulted in multiple litigation or coerced settlements, and has generated confusion and uncertainty regarding its application. For all the foregoing reasons, we have concluded *Royal Globe, supra,* 23 Cal.3d 880, should be overruled.

We caution, however, that our decision is not an invitation to the insurance industry to commit the unfair practices proscribed by the Insurance Code. We urge the Insurance Commissioner and the courts to continue to enforce the laws forbidding such practices to the full extent consistent with our opinion.

In that regard, we observe that our opinion leaves available the imposition of substantial administrative sanctions by the Insurance Commissioner (see §§ 790.05-790.09). These sanctions include issuance of cease and desist orders to enjoin further violations of section 790.03. (See § 790.05.) Willful violation of such orders may result in a maximum fine of $55,000; repeated violations may result in a suspension of the insurer's license for up to a year. (§ 790.07.)

The dissent herein expresses some doubt that the Insurance Commissioner will enforce section 790.03 and punish violations thereof; the dissent finds no published appellate cases involving such disciplinary action. But surely we can assume very little from the absence of apposite appellate cases. It is as likely that the commissioner's efforts prevailed without the necessity of an appeal, that any relevant opinions were unpublished, or that administrative enforcement was deemed unnecessary in light of the deterrent effect of an inevitable *Royal Globe* action routinely filed whenever immediate settlement of claims is not forthcoming.

■ Moreover, apart from administrative remedies, the courts retain jurisdiction to impose civil damages or other remedies against insurers in appropriate common law actions, based on such traditional theories as

fraud, infliction of emotional distress, and (as to the insured) either breach of contract or breach of the implied covenant of good faith and fair dealing. Punitive damages may be available in actions not arising from contract, where fraud, oppression or malice is proved. (See Civ. Code, § 3294.) In addition, prejudgment interest may be awarded where an insurer has attempted to avoid a prompt, fair settlement. (See *id.,* § 3291.) Finally, nothing we hold herein would prevent the Legislature from creating additional civil or administrative remedies, including, of course, creation of a private cause of action for violation of section 790.03. We hold, however, that thus far the Legislature has not manifested an intent to create such a private cause of action.

The question arises whether our decision should apply to *Royal Globe* actions that already have been filed or litigated, but are not yet final. The general rule is that "a decision of a court of supreme jurisdiction overruling a former decision is retrospective in its operation. [Fn. & citation omitted.] We have recognized exceptions to that rule when considerations of fairness and public policy preclude full retroactivity. [Citation.] For example, where a . . . statute has received a given construction by a court of last resort, and contracts have been made or property rights acquired in accordance with the prior decision, neither will the contracts be invalidated nor will vested rights be impaired by applying the new rule retroactively. [Citation.]" (*Peterson* v. *Superior Court* (1982) 31 Cal.3d 147, 151-152. [181 Cal.Rptr. 784, 642 P.2d 1305], fn. omitted.)

Without implying any broad exception to the general rule of retrospectivity described above, and in the interest of fairness to the substantial number of plaintiffs who have already initiated their suits in reliance on *Royal Globe,* we hold that our decision overruling that case will not apply to those cases seeking relief under section 790.03 filed before our decision here becomes final. In the following part of this opinion, we turn to an analysis of the principles that will govern recovery in surviving *Royal Globe* cases, such as the present one, brought by third party claimants.

## VI. Requirement of a Prior Determination of Liability

In *Royal Globe* we did not discuss the procedural prerequisites of a third party's section 790.03 claim against the insurer, except to hold that such a claim "may not be brought until the action between the injured party and the insured is concluded." (23 Cal.3d at p. 884.) We did not explicitly consider what would constitute a sufficient "conclusion" of the action. For purposes of the present case and other pending *Royal Globe* actions which are not affected by the decision here, we must now decide whether settlement of the third party's underlying claim against the insured "concludes" the action within the meaning of *Royal Globe,* so that after settling the

underlying claim a claimant can bring a subsequent suit against the insurer under section 790.03, subdivision (h). We will hold, for these pending cases, that settlement is an insufficient conclusion of the underlying action: there must be a conclusive judicial determination of the insured's liability before the third party can succeed in an action against the insurer under section 790.03.

In *Royal Globe,* the third party claimant attempted to join the insurer as a defendant in her pending action against the insured on the underlying tort claim. We concluded that a joint lawsuit against both the insured for negligence and the insurer for violating its duties under section 790.03, subdivision (h), would be improper, for three reasons. (23 Cal.3d at pp. 891-892.) First, a joint trial "would obviously violate both the letter and spirit of [Evid. Code, § 1155]." (*Id.,* at p. 891.) That section provides that evidence that an alleged tortfeasor is insured is inadmissible to prove the insured's negligence or wrongdoing. Its "obvious purpose" is to prevent the prejudicial use of such evidence in a proceeding to determine the insured's liability. (*Ibid.*)

Second, a joint trial would hamper the defense of the insured on the liability question. We stated, "unless the trial against the insurer is postponed *until the liability of the insured is first determined,* the defense of the insured may be seriously hampered by discovery initiated by the injured claimant against the insurer." (23 Cal.3d at p. 892, italics added.) Third, "damages suffered by the injured party as a result of the insurer's violation of subdivisions (h)(5) and (h)(14) may best be determined after the conclusion of the action by the third party claimant against the insured." (*Ibid.*)

The Courts of Appeal, struggling to interpret our interrelated references to a conclusion of the underlying action and a determination of the insured's liability, have reached conflicting conclusions regarding the prerequisites for a *Royal Globe* action. We will now attempt to resolve this confusion.

Several courts have concluded that a determination of the insured's liability is a prerequisite to recovery on a *Royal Globe* claim, relying in part on the notion that the underlying insurance contract is an indemnity contract. "It is fundamental that an insurance contract is, by nature, an indemnity contract; no enforceable claim accrues against the insurer until the insured's liability is in fact established." (*Williams* v. *Transport Indemnity Co.* (1984) 157 Cal.App.3d 953, 960 [203 Cal.Rptr. 868].)

The *Williams* court affirmed a summary judgment in favor of an insurer where the third party claimant had failed to initiate any legal action to establish the liability of the insured. The claimant argued that under section 790.03 the liability of the insured was not at issue, and that the only issue

was whether the insurer failed to attempt in good faith to make a prompt and fair settlement of the underlying claim at a time when liability had become "reasonably clear." The court responded, "the issue of whether, from facts known to defendants, liability had become reasonably clear at a certain time cannot be decided in a vacuum." (157 Cal.App.3d at p. 959.) Because under its indemnity contract the insurer could be liable only if the insured was liable, the court stated, "the essential preliminary inquiry in any action alleging the insurer's violation of . . . section 790.03, subdivision (h)(5) must be whether the insured was liable in actuality for the third party claimant's injury." (*Id.,* at p. 960.) In short, if the insured is not liable to the claimant, then the insurer is likewise not liable on the claim.

In *Heninger* v. *Foremost Ins. Co.* (1985) 175 Cal.App.3d 830 [221 Cal.Rptr. 303], Justice Eagleson, relying in part on the *Williams* indemnification rationale, found that "[t]he right of an insured party to file a direct suit against an insurer under the *Royal Globe* doctrine does not eliminate th[e] requirement" that the liability of the insured must be determined before the liability of the insurer can arise. (*Id.,* at pp. 834-835.) A determination of the insured's liability was required because "otherwise these prohibitions [of section 790.03] on unfair claims settlement practices would create a form of statutory liability without fault." (*Id.,* at p. 834.) The court concluded, "There cannot be unfair claims settlement practices *in vacuo. . . .* [T]he cases do not support nor can we perceive any legislative intent to create rights of action totally divorced from ultimate legal liability [of the insured]." (*Ibid.*) In other words, according to *Heninger,* the statute does not require an insurer to pay or settle every claim presented by a third party claimant without regard to whether its insured is liable on the underlying claim. This analysis seems reasonable to us.

Plaintiff argues that the *Williams/Heninger* reliance on indemnification concepts is troublesome because a violation of section 790.03 stems directly from the insurer's unfair practices, and not from the insured's underlying fault. We do disagree with *Williams*'s statement that "a duty to settle a third party claim in good faith does not arise unless the insured is liable" (157 Cal.App.3d at p. 965). The duty to attempt to settle arises under section 790.03, subdivision (h)(5), when liability becomes "reasonably clear." Yet we differentiate here between the duty that the insurer owes (which exists before the insured's liability is finally established) and the right to recover, under *Royal Globe,* for a breach of that duty. (Compare a legal malpractice action in which, before a client can recover for the attorney's breach of duty, he must first establish that absent the attorney's malpractice he would have prevailed on the underlying action. [See, e.g., *Kessler* v. *Gray* (1978) 77 Cal.App.3d 284 [143 Cal.Rptr. 496]; see also Mallen & Levit, Legal Malpractice (2d ed. 1981) § 650, pp. 796-799.] The trial of the "suit within a suit" involves a determination of the merits of the

underlying action; thus, there can be no recovery for a breach of duty without a preliminary showing as to the merits of an underlying claim.)

Further, as *Heninger, supra,* 175 Cal.App.3d 830, explained, section 790.03 does not require the insurer to settle all third party claims. The insurer is entitled, in good faith, to decline to pay what it considers to be an excessive settlement on a claim of questionable validity. As stated in *Beckham* v. *Safeco Ins. Co. of America* (9th Cir. 1982) 691 F.2d 898, 903, footnote 3, "The insurer is not required to settle claims in which liability is reasonably clear, it is simply required to make a good faith attempt to reach a settlement. While liability may be reasonably clear, damages may not be, and an insurer is not necessarily required to accept whatever settlement demand is made by the third-party claimant."

We conclude that *Williams* and *Heninger* correctly held that an injured claimant has a right of recovery under *Royal Globe* only upon proof that the insured was actually liable to the third party claimant. If the insured is not liable for the claimant's injury, the claimant has no right to damages from the insured, and the claimant cannot be permitted to recover for "unfair conduct" by the insurer in refusing to settle an underlying unmeritorious claim.

Our conclusion that a determination of the insured's liability is necessary in order for the claimant to recover from the insurer for a violation of section 790.03 is not in itself determinative of whether a *Royal Globe* suit could be brought following a settlement of the underlying claim. Clearly, a settlement without more does not constitute a determination of the insured's liability. (§ 11582; *Zalta* v. *Billips* (1978) 81 Cal.App.3d 183, 190 [144 Cal.Rptr. 888] ["Obviously, the fact of settlement says nothing about a defendant's liability, his nonliability, his freedom from fault, or his culpability"]; *Rodriguez* v. *Fireman's Fund Ins. Co.* (1983) 142 Cal.App.3d 46, 55 [190 Cal.Rptr. 705].) Plaintiff contends, however, that the insured's liability can be determined *after* settlement, as part of the *Royal Globe* suit. Defendant insists, to the contrary, that a prior final judicial determination of the insured's liability is a condition precedent to the bringing of a *Royal Globe* action (the "predetermination" rule). We turn now to this question of the timing of the required determination of liability.

The first published opinion after *Royal Globe* to refer to the "determination of liability" as a condition precedent to a section 790.03 cause of action was *Doser* v. *Middlesex Mutual Ins. Co.* (1980) 101 Cal.App.3d 883, 891 [162 Cal.Rptr. 115]. *Doser* did not involve a third party *Royal Globe* claim, but rather a cause of action for breach of the implied covenant of good faith and fair dealing asserted by an assignee of the insured. In that case, after initiating a wrongful death action against the estate of the alleged tortfeasor,

plaintiffs obtained from the estate an assignment of all its causes of action against the estate's insurer, then sued the insurer, leaving the wrongful death action in abeyance. The insurer argued in the section 790.03 suit that the estate had not suffered any legal liability because there had been no final judgment in the wrongful death action, and thus the assignee had no cause of action to assert. The court agreed, holding that no cause of action for breach of the implied covenant could arise until the insured incurred a binding judgment in excess of the policy limit. (101 Cal.App.3d at p. 891.) It then noted, in dictum, that "even under the reasoning in [*Royal*] *Globe,* '. . . the third party's suit may not be brought until the action between the injured party and the insured is concluded . . . [and] liability of the insured is first determined . . . .' " (*Ibid.*) Several later cases have agreed with the *Doser* interpretation of *Royal Globe* as requiring *both* a conclusion of the action *and* a determination of liability as conditions precedent to commencement of a section 790.03 action.

In *Nationwide Ins. Co.* v. *Superior Court* (1982) 128 Cal.App.3d 711, 714 [180 Cal.Rptr. 464], Justice Kaufman, citing *Doser,* stated that *Royal Globe* held "the injured third party may not institute [a section 790.03] action until a judgment establishing the liability of the insured has been secured." In *Nationwide,* the claimant sued the alleged tortfeasor's insurer after obtaining a judgment against the insured, but during the pendency of the insured's appeal from that judgment. The court held that because the judgment against the insured could be reversed on appeal and the case retried, *Royal Globe*'s concerns regarding discovery and determination of damages were "fully applicable to the case at bench." (128 Cal.App.3d at p. 714.) It concluded that the *Royal Globe* language about determination of liability and conclusion of the action "could only have had reference to a final determination and conclusion, a final judgment." (*Ibid.*)

Following *Nationwide,* the court in *Williams* v. *Transport Indemnity Co., supra,* 157 Cal.App.3d 953, stated that a section 790.03 action was "subject to [a] condition precedent . . . [that] the liability of the insured must be finally determined prior to commencement of a suit against the insurer." (*Id.,* at p. 964.) In *Heninger* v. *Foremost Ins. Co., supra,* 175 Cal.App.3d 830, 834, the court, citing *Nationwide* and *Williams,* concluded that "no viable cause of action can be pled for an alleged violation of [section 790.03, subdivision (h)] until the twin requirements of conclusion of the dispute between the injured party and the insured, *and* final determination of the insured's liability are alleged." (Original italics.)

The Court of Appeal in the present case departed from the *Nationwide* reasoning. It held that the plaintiff could maintain her section 790.03 action following a settlement and dismissal with prejudice of the underlying claim, stating, "Nor do we agree with the *Heninger* court's reading of *Royal Globe*

as requiring a final determination of liability[,] as long as the underlying action has been 'concluded.'" The court decided that the "obvious purpose" of the *Royal Globe* requirement of a "conclusion" of the underlying action was "to avoid prejudicing the defense of the insured in the underlying case and to ascertain the amount of the damages, if any, suffered by the injured plaintiff, not to shield an err[a]nt insurer from the consequences of its tortious breach of its duties to that injured claimant. The language in *Royal Globe* 'until the liability of the insured is first determined' was not necessary to and did not serve the purpose of determining any of the facts or issues of that case which deferred the determination of the 790.03 action until after the conclusion of the underlying action." Yet, somewhat inconsistently, the court at another point in its opinion stated, "We must next determine whether the insured's liability has been conclusively established, *that being a prerequisite to bringing an unfair practice bad faith action* against the insurer." (Italics added.)

For the first aspect of its holding, that a final determination of the insured's liability was not a prerequisite to bringing a *Royal Globe* action, the Court of Appeal purported to rely on *Rodriguez v. Fireman's Fund, supra,* 142 Cal.App.3d 46. The *Rodriguez* court declined to follow the *Nationwide* rule holding a final judgment to be a condition precedent to a section 790.03 action. In *Rodriguez,* a third party claimant sued the insurer after settling her underlying claim against the insured. She alleged the insurer had "admitted the liability of its insured." (*Id.,* at p. 55.) The court held she had stated a cause of action under *Royal Globe,* because "where the liability of the insured is *admitted*" a prior judgment determining liability was unnecessary. (*Id.,* at p. 53, italics added; see also *Williams, supra,* 157 Cal.App.3d at pp. 958-959; *Heninger, supra,* 175 Cal.App.3d at pp. 833, 835.) We find no indication in the record herein that defendant admitted the insured was liable, and thus the appellate court's reliance on *Rodriguez* is misplaced. In any event, we have determined that a final judicial determination is required, and that an admission does not suffice to determine the insured's liability.

Aside from *Rodriguez, supra,* the Court of Appeal opinion in this case is consistent with two published cases of the Fourth District, Division Three. In *Afuso v. United States Fid. & Guar. Co.* (1985) 169 Cal.App.3d 859 [215 Cal.Rptr. 490], the court held that a third party claimant stated a cause of action for breach of section 790.03 by alleging she had settled the underlying dispute, and executed "a release of all claims." The court held, "by pleading a settlement and release, plaintiff has met the minimum requirements for establishing her action was concluded within the meaning of *Royal Globe.*" (*Id.,* at p. 863.) The court did not discuss the requirement that the insured's liability be first determined. In *Vega v. Western Employers Ins. Co.* (1985) 170 Cal.App.3d 922 [216 Cal.Rptr. 592], the same court

reversed a summary judgment in favor of the insurer on a section 790.03 claim where the claimant had settled the underlying claim, after a verdict against the insured, and while the insured's appeal was pending. Again, the court failed to address the issue of a requirement of a final determination of the insured's liability.

We reject the approach of *Afuso* and *Vega,* and adopt the reasoning of *Nationwide, supra,* 126 Cal.App.3d 711, requiring a final judgment determining the insured's liability before the institution of a *Royal Globe* action. This predetermination rule precludes a claimant who has settled his underlying claim against the insurer from subsequently suing the insurer for damages for statutory bad faith committed in the process of reaching the settlement. The rule is supported in part by section 790.03's purpose of encouraging prompt and reasonable settlements of claims, as well as by various other legal and practical considerations.

Allowing the claimant to sue the insurer after settling the underlying claim would mean that the claimant must establish the insured's liability within the *Royal Globe* action itself. This would cause enormous practical and policy problems. The immediate concern raised by a potential determination of the insured's liability within the action against the insurer is the same evidentiary problem we cited in *Royal Globe.* In that case we held that Evidence Code section 1155 prohibits a third party claimant from suing both the insurer (under § 790.03) and the insured (on the underlying claim) in the same lawsuit. (23 Cal.3d at p. 891.) That section forbids the introduction of "[e]vidence that a person was, at the time a harm was suffered by another, insured wholly or partially against loss arising from liability for that harm . . . to prove negligence or other wrongdoing." In a section 790.03 action, the trier of fact would be aware the defendant is an insurer. Further, the plaintiff's case would depend on proof of the existence of an insurance policy covering the event resulting in the plaintiff's injury. Thus, evidence of insurance would comprise an essential part of the case. Any such evidence would have an obvious potential to prejudice the jury's determination of the insured's liability.

Further, the existence of a previous settlement could itself improperly influence a jury's evaluation of the insured's liability. The jury would know that the insured would not be adversely affected by the verdict, and it would also necessarily be aware that the insurer had paid money in settlement to the claimant on behalf of the insured. Although, as we have noted, the existence of a settlement is irrelevant to the issue of the insured's liability (see *Zalta* v. *Billips, supra,* 81 Cal.App.3d at p. 190), it would be difficult to prevent the jury from considering the settlement as evidence that the insured was liable. This use of evidence of settlement would violate Evidence

Code section 1152, which prohibits admitting such evidence to prove the settling party's liability on the claim settled.

Another problem with allowing the proposed postsettlement litigation is that it would deprive the settling parties of a major advantage of settlement. Establishing the insured's actual liability after settlement would involve litigation of the very issue that the insured and the insurer attempted to avoid litigating. Whether the claimant wins or loses on the liability issue, he has succeeded in forcing the insurer and insured to litigate the claim they had previously concluded by settling. Allowing such a postsettlement trial on the insured's liability would diminish any advantage to be gained by either the insured or the insurer in settling the underlying claim. Indeed, it would *penalize* the insurer for choosing to settle a claim rather than pursuing it to a final judgment, by subjecting the insurer to subsequent litigation on the liability issue it has already settled.

Allowing postsettlement *Royal Globe* suits would give an unwarranted and unfair advantage to the third party claimant, who could settle, retain the benefits of settlement, and then sue the insurer for additional compensation after failing to negotiate a larger settlement on the underlying claim. It would also require the insurer to focus excessively on its own potential liability to the third party and could negatively affect the insurer's discharge of its duties toward its insured. ■■■ Although section 790.03 imposes on the insurer a duty to the public, including the third party claimant whose interests are adverse to the interests of the insured, this does not diminish the importance of the insurer's obligations to its own insured. Insurance is initially obtained for the protection of the insured, and the insurer's primary duty is to protect the interests of its own insured.

■■■ Finally, if, as in this case, the claimant has dismissed the action against the insured after settling the claim, then it could be argued that the settlement combined with a dismissal with prejudice legally precludes litigating the liability of the insured. The Court of Appeal here found that the settlement and dismissal together constituted a final "conclusion" of the action, precluding any further proceedings on the underlying claim: " ' "Where the parties to an action settle their dispute and agree to a dismissal, it is a retraxit and amounts to a decision on the merits and as such is a bar to further litigation on the same subject matter between the parties." ' " (Italics omitted, quoting *Datta* v. *Staab* (1959) 173 Cal.App.2d 613, 621 [343 P.2d 977]; the identical language also appears in *Rodriguez, supra,* 142 Cal.App.3d at p. 54.) Under this analysis, a settlement arguably precludes later litigation on the issue of liability as well as on the value of the claim because, although it does not amount to a determination of liability, it is intended to function as a final conclusion of the underlying action which involves both the issues of liability and damages. (See *A.J. Industries,*

*Inc.* v. *Ver Halen* (1977) 75 Cal.App.3d 751, 759 [142 Cal.Rptr. 383] [refusing to allow relitigation of issue of liability after settlement]; *County of Los Angeles* v. *Law Building Corp.* (1967) 254 Cal.App.2d 848, 853-855 [62 Cal.Rptr. 542] [settlement barred relitigation on value of settled claim].)

In stating that the retraxit did not preclude a section 790.03 action, the Court of Appeal here distinguished the insurer's liability under section 790.03 from the insured's liability for the underlying claim. The court, however, failed to recognize that, as we have explained, a judicial determination of the insured's liability must be made before the claimant can recover from the insurer. Because no such determination was made in this case, plaintiff has failed to state a cause of action under section 790.03.

In sum, our consideration of the legal and practical difficulties of allowing a postsettlement *Royal Globe* action leads us to conclude that as to cases filed prior to finality of our opinion herein, the applicable rule is that the insured's liability must be judicially determined before a *Royal Globe* action can be brought. This "predetermination" rule, although not without its drawbacks, seems to us to be the optimal accommodation of competing considerations within the limitations of the *Royal Globe* doctrine. Thus, for surviving *Royal Globe* actions, a final judicial determination of the insured's liability is a condition precedent to a section 790.03 action against the insurer.

## DISPOSITION

Plaintiff, having failed to obtain a judicial determination of the insured's liability, is not entitled to sue defendant under *Royal Globe.* Thus, the trial court's order sustaining defendant's demurrer was correct. Pending the finality of this opinion, no private action may be brought under section 790.03, subdivision (h), unless a final judicial determination of the insured's liability has been first obtained. Effective upon finality of this opinion, *Royal Globe* is overruled.

The judgment of the Court of Appeal is reversed, and the cause remanded for further proceedings consistent with this opinion.

Panelli, J., Arguelles, J., Eagleson, J., and Kaufman, J., concurred.

**MOSK, J.**—I dissent.

*Royal Globe* (1979-1988), may it Rest in Peace.[1] During its life it served the people of California well, particularly the victims of unfair and deceptive practices. The majority have now replaced *Royal Globe* with a "Royal

---

[1] *Royal Globe Ins. Co.* v. *Superior Court* (1979) 23 Cal.3d 880 [153 Cal.Rptr. 842, 592 P.2d 329].

Bonanza" for insurance carriers, i.e., total immunity for unfair and deceptive practices committed on innocent claimants. They have exalted principal over principle. It will be interesting to observe whether this judicial largesse causes insurance premiums to decrease or insurance profits to increase.

In the trial court, defendant demurred and at no time there or in the Court of Appeal raised any question about the continued vitality of *Royal Globe*. Indeed its demurrer was offered, and sustained, on grounds consistent with the underlying premise of *Royal Globe*. We granted review in this matter for the sole purpose of clearing up detrital issues on which Courts of Appeal have differed. The insurance industry asked for a loaf of bread. The majority, with remarkable magnanimity, give it the whole bakery.

Instead of concentrating on the issues raised and argued throughout these and other pending proceedings, the majority have chosen to avoid fundamental answers by permanently eliminating the question. In most cases, of course, it would make our task relatively uncomplicated if we could evade interpreting the law with finality by simply changing the law. On the other hand, making our job easier is no justification for totally destroying a cause of action authorized by statute, approved by decisions of this court and of Courts of Appeal, and acquiesced in by the Legislature for nearly a decade. The judicial activism of the majority seriously impairs the orderly administration of justice.

In making their opinion inapplicable to this and all pending cases, the majority in effect render a mere advisory opinion. While they suggest this approach is adopted out of a sense of compassion for victims who have lawsuits pending, that compassion apparently does not extend to future victims of unfair and deceptive acts who may suffer the same or greater damage. Thus the reality is that the majority are merely applying a thin sugar coat to their cyanide pill.

The majority contend that sections 790.03 and 790.09 of the Insurance Code do not create a private cause of action. In view of their expurgated quotation of section 790.03 in footnote 2 of the majority opinion, that conclusion might arguably follow. Unfortunately the majority omit other parts of the same section that clearly implicate the duty of insurance carriers not merely to their insured, but also to claimants. One who objectively reads the following will receive an entirely different outlook: "§ 790.03. The following are hereby defined as unfair methods of competition and unfair and deceptive acts or practices in the business of insurance.

"...

"(h) Knowingly committing or performing with such frequency as to indicate a general business practice any of the following unfair claims settlement practices: [¶] (1) Misrepresenting to *claimants* pertinent facts or insurance policy provisions relating to any coverages at issue.

"(2) Failing to acknowledge and act reasonably promptly upon communications with respect to *claims* arising under insurance policies.

"(3) Failing to adopt and implement reasonable standards for the prompt *investigation and processsing of claims* arising under insurance policies.

"(4) Failing to affirm or deny coverage of *claims* within a reasonable time after proof of loss requirements have been completed and submitted by the insured.

"(5) Not attempting in good faith to effectuate prompt, fair, and equitable *settlements of claims* in which liability has become reasonably clear.

". . . . . . . . . . . . . . . . .

"(8) Attempting to *settle claims* on the basis of an application which was altered without notice to, or knowledge or consent of, the insured, his representative, agent, or broker.

"(9) Failing, after *payment of a claim,* to inform insureds or beneficiaries, upon request by them, of the coverage under which payment has been made.

"(10) Making known to insureds *or claimants* a practice of the insurer of appealing from arbitration awards in favor of insureds or claimants for the purpose of compelling them to accept settlements or compromises less than the amount awarded in arbitration.

"(11) Delaying the investigation or payment of *claims* by requiring an insured, *claimant,* or the physician of either, to submit a preliminary claim report, and then requiring the subsequent submission of formal proof of loss forms, both of which submissions contain substantially the same information.

"(12) *Failing to settle claims promptly, where liability has become apparent,* under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage.

"(13) Failing to provide promptly a reasonable explanation of the basis relied on in the insurance policy, in relation to the facts or applicable law, for the *denial of a claim* or for the *offer of a compromise settlement.*

"(14) Directly advising a *claimant* not to obtain the services of an attorney.

"(15) Misleading a *claimant* as to the applicable statute of limitations." (Italics added.)

Note particularly that throughout the foregoing clauses reference is made to claims and claimants, and in clauses (8), (9), (10) and (11) a distinction is clearly made between the insured and claims or claimants. Thus it is fatuous to assert that the legislative intent was merely to provide redress for the insured but not for third party claimants when any of the statutorily prohibited acts are committed.

But, assert the majority as did the defendants unsuccessfully in *Royal Globe*, a pattern of unfair business practices must be shown, not a single deceptive act. The language of subdivision (h) is somewhat ambiguous in this respect: it prohibits "Knowingly committing or performing with such frequency as to indicate a general business practice" any of the unfair claims settlement practices set forth. It is unclear whether the words "with such frequency as to indicate a general business practice" were intended to modify both the terms "Knowingly committing" and "performing." The most logical reading, however, is that the quoted language provides two alternate methods by which the prohibited acts may be shown, i.e., a violation of the subdivision occurs if the prohibited acts are knowingly committed on one occasion or, if knowledge cannot be established, then it will suffice if the acts are performed with such frequency as to indicate a general business practice. This interpretation of the section was adopted by a commentator in reviewing certain amendments to subdivision (h) in 1975. (*Review of Selected 1975 California Legislation* (1976) 7 Pacific L.J. 237, 484.)

It also bears noting that while some of the clauses of the subdivision use the plural—"claimants"—a number deliberately refer in the singular to "*a* claim" (9), "*a* claim" and "*a* compromise settlement" (13), "*a* claimant" (14), and "misleading *a* claimant" (15).

It is inconceivable that the Legislature intended that a litigant would be required to show that the insurer committed the acts prohibited by subdivision (h) "with such frequency as to indicate a general business practice." There would be no rational reason why an insured or a third party claimant injured by an insurer's unfair conduct, knowingly performed, should be required to demonstrate that the insurer had frequently been guilty of the same type of misconduct involving other victims in the past. The insurance department may have a policy to require repeated misconduct as the basis for its enforcement of subdivision (h). But while repetition of prohibited acts may be relevant to the duty of the Insurance Commissioner to issue a

cease and desist order, to an aggrieved private litigant who can demonstrate that the insurer acted deliberately, the frequency of the insurer's misconduct and its application to other victims are irrelevant. (Accord, *Delos* v. *Farmers Insurance Group* (1979) 93 Cal.App.3d 642, 653 [155 Cal.Rptr. 843].)

Curiously, the majority find it necessary to caution the insurance industry not to commit the unfair practices proscribed by the Insurance Code, and they politely invite the Insurance Commissioner to "continue" to enforce the laws. However, the majority fail to demonstrate that such enforcement has ever existed. Since 1959 when sections 790 and following of the Insurance Code were adopted, 62 volumes of California Reports and 297 volumes of California Appellate Reports have been published. In those 359 volumes there are more than 300,000 pages. On not one page of one volume is a single case reported in which the Insurance Commissioner has taken disciplinary action against a carrier for "unfair and deceptive acts or practices in the business of insurance" involving a claimant. *Not one case in 29 years.*

In the absence of demonstrable enforcement by the Insurance Commissioner, it is understandable that claimants seek to litigate their own rights rather than to rely on Big Brother. And I am convinced now, as I was when *Royal Globe* was decided, that the Legislature intended they may do so.

The majority try desperately to minimize the fact that there has been legislative approval of *Royal Globe*. Despite the inflammatory and impertinent descriptions of our decision by the defendant and amici—"convoluted reasoning," "illogical," "flawed analysis" and "made of whole cloth"—the case has survived Herculean efforts of the insurance industry to legislatively overrule it.

With full knowledge of *Royal Globe* and its construction of the relevant Insurance Code sections, for nine years the Legislature has refused to enact bills designed to overrule, modify or limit the decision and its statutory interpretation. First there was Senate Bill No. 483 (1979 Reg. Sess.), initially introduced on March 1, 1979, to amend the general provisions of Insurance Code section 31. On May 9, 1979—five weeks after our decision in *Royal Globe*—the bill was amended to change section 790.03. The amended bill provided: ". . . (i) Notwithstanding the provisions of Section 790.09, a violation of subdivision (h) shall not create civil liability against any insurer by an insured, third party claimant, or any person other than the commissioner pursuant to the authority provided in Sections 790.05 and 790.06. [¶] Sec. 2. It is the intent of this act to overrule the holding in Royal Globe Insurance Company v. Superior Court (__ 3rd __) which established a

cause of action by a third party claimant or insured based upon a violation of subdivision (h) of Section 790.03." (2 Sen. J. (1979 Reg. Sess.) p. 3071.)

After a subsequent amendment, Senate Bill No. 483 passed the Senate by a six-vote margin on June 1, 1979, and was referred to the Assembly. On September 11, 1979, the bill was rejected by the Ways and Means Committee, and on November 30, 1980, was transferred from the Assembly without further action. (Sen. Final Hist. (1979 Reg. Sess.) p. 305.) The proposal ultimately died. Thus the Legislature was not merely silent after *Royal Globe,* but refused to pass a bill expressly overruling it. In the circumstances this represents affirmative legislative approval and confirmation of the *Royal Globe* decision far beyond mere inattention. (*People* v. *Hallner* (1954) 43 Cal.2d 715, 719 [277 P.2d 393].)

In 1983 the Legislature actually amended section 790.03 without addressing or changing subdivision (h) or the *Royal Globe* holding. In adopting legislation, the Legislature is presumed to know of existing domestic judicial decisions and to enact and amend statutes in light of such decisions that have a direct bearing on them. (*Estate of Banerjee* (1978) 21 Cal.3d 527, 537 [147 Cal.Rptr. 157, 580 P.2d 657].) The failure of the Legislature to change the law in a particular respect, when the general subject is before it and changes in other respects are made, is indicative of an intent to leave the law as it stands in the aspects not amended. (*Estate of McDill* (1975) 14 Cal.3d 831, 837-838 [122 Cal.Rptr. 754, 537 P.2d 874]; *Bailey* v. *Superior Court* (1977) 19 Cal.3d 970, 977-978, fn. 10 [140 Cal.Rptr. 669, 568 P.2d 394]; *People* v. *Olsen* (1984) 36 Cal.3d 638, 647, fn. 19 [205 Cal.Rptr. 492, 685 P.2d 52].) The majority's futile effort to avoid the foregoing case law stands the concept of legislative intent on its head.

Notwithstanding defendant's apparent desire to escape accountability for bad faith insurance practices, *Royal Globe* is the law, has not been changed, modified or amended by legislative action in the ensuing nine years, and has directly implemented the clear legislative intent to eradicate, and hold insurance companies accountable for, unfair insurance claims practices.

Despite legislative acquiescence, defendant and now the majority attempt to give an impression that *Royal Globe* was some kind of aberration, wholly unprecedented and unanticipated. Nothing could be farther from the fact. At least three cases preceding *Royal Globe* held that the Insurance Code provisions authorized action by claimants and not exclusively by the state's administrative agency.

The first case was *Greenberg* v. *Equitable Life Assur. Society* (1973) 34 Cal.App.3d 994 [110 Cal.Rptr. 470]. The court, in an opinion by Justice Thompson and concurred in by Justices Wood and Lillie, held that the Insurance Code "contemplates a private suit to impose civil liability

irrespective of governmental action against the insurer for violation" of code provisions. The court added that "The fair construction is that the person to whom the civil liability runs may enforce it by an appropriate action." (*Id.* at p. 1001.) Any other construction, the court held, "would overturn by implication the rule of *Crisci* v. *Security Ins. Co.* [1967] 66 Cal.2d 425 [58 Cal.Rptr. 13, 426 P.2d 173]." (*Id.* at p. 1001, fn. 5.) A petition for hearing in this court was unanimously denied.

A second case adopting the identical reasoning was *Shernoff* v. *Superior Court* (1975) 44 Cal.App.3d 406 [118 Cal.Rptr. 680], by Justice Fleming with Justices Compton and Beach concurring. The court pointed out that the "commissioner's disciplinary authority is limited to restraint of future illegal conduct by real parties in interest, and he possesses no authority to enter money judgments for past injuries." (*Id.* at p. 409.) The court relied on section 790.09, which clearly declares that no cease and desist order absolves an insurance carrier from civil liability.

The third case, written by Justice Kaufman for himself and Justices Tamura and McDaniel, was *Homestead Supplies, Inc.* v. *Executive Life Ins. Co.* (1978) 81 Cal.App.3d 978 [147 Cal.Rptr. 22]. The court held that the Insurance Code sections "define and prohibit insurers from engaging in unfair methods of competition and unfair and deceptive acts or practices in the business of insurance. They are directed at insurers, not insureds. Indeed, the nature of the conduct proscribed indicates clearly that at least one of the statutory purposes is protection of the public. (See § 790.03.) In fact, it has been held that section 790.09 contemplates civil liability to members of the consuming public injured by an insurer's violation of sections 790.02 and 790.03." (*Id.* at p. 992.)

In addition to the foregoing, *Schlauch* v. *Hartford Accident & Indemnity Co.* (1983) 146 Cal.App.3d 926, 934 [194 Cal.Rptr. 658], held *Royal Globe* to apply retroactively, "since insurers were statutorily prohibited from engaging in these unfair practices, they can claim no reliance upon the lack of legal authority for third party damage suits. In short, insurance carriers had fair warning that their conduct was prohibited. . . . Since the decision in *Royal Globe* did not impose a new duty upon insurers, but only provided a different means of enforcement, [*it*] *should have been foreseen*. . . ." (Italics added.) Indeed, as pointed out in *Bodenhamer* v. *Superior Court* (1986) 178 Cal.App.3d 180 [223 Cal.Rptr. 486], there is nothing "novel or incongruous" in subjecting an insurance business to more than one avenue of responsibility. ·

Thus it is clear that *Royal Globe* was preordained. Certainly it is indefensible for defendant and the majority to assert the opinion was unprecedent-

ed when manifestly it followed the rule established in at least three earlier well-reasoned appellate decisions. I must assume that the majority, though they are curiously silent about it, mean to also overrrule *Greenberg, supra,* 34 Cal.App.3d 994, *Shernoff, supra,* 44 Cal.App.3d 406, and *Homestead Supplies, supra,* 81 Cal.App.3d 978, and thus to repudiate the statutory interpretation by nine distinguished Court of Appeal justices.

Subsequent to *Royal Globe,* Courts of Appeal have had remarkably little difficulty in interpreting and applying it as authority. See, e.g., Justice Kaufman's opinion in *Nationwide Ins. Co.* v. *Superior Court* (1982) 128 Cal.App.3d 711 [180 Cal.Rptr. 464]; Justice Eagleson's opinion in *Heninger* v. *Foremost Ins. Co.* (1985) 175 Cal.App.3d 830 [221 Cal.Rptr. 303]; and the following, among many other cases: *Sych* v. *Insurance Co. of North America* (1985) 173 Cal.App.3d 321 [220 Cal.Rptr. 692]; *Vega* v. *Western Employers Ins. Co.* (1985) 170 Cal.App.3d 922 [216 Cal.Rptr. 592]; *Afuso* v. *United States Fid. & Guar. Co.* (1985) 169 Cal.App.3d 859 [215 Cal.Rptr. 490]; *Smith* v. *Interinsurance Exchange* (1985) 167 Cal.App.3d 301 [213 Cal.Rptr. 138]; *Williams* v. *Transport Indemnity Co.* (1984) 157 Cal.App.3d 953 [203 Cal.Rptr. 868]; *Trujillo* v. *Yosemite-Great Falls Ins. Co.* (1984) 153 Cal.App.3d 26 [200 Cal.Rptr. 26]; *Rodriguez* v. *Fireman's Fund Ins. Co.* (1983) 142 Cal.App.3d 46 [190 Cal.Rptr. 705]. All of these well-considered cases are now to be eliminated sub silentio.

Finally, the majority use considerable ink to inform us that other states have reached a conclusion contrary to that of *Royal Globe.* This is wholly irrelevant. California courts alone have the responsibility of interpreting the laws adopted by the California Legislature, and they cannot be deterred from that duty by what other states have done or failed to do under laws enacted by their legislative bodies.

The insurance industry, with a lavish public relations and media campaign, has failed to persuade the people of California that it should be immune from responsibility for unfair and deceptive acts. Up to now no court has so held. The industry, with the service of dozens of lobbyists, failed to persuade the Legislature that the statute was improperly imposing liability for unfair and deceptive acts. Now, regrettably, the insurance industry has succeeded in persuading justices of this court that it is entitled to immunity from the same type of responsibility required of every other business and individual that commit deceptive practices.

The question, unanswered by the majority because it is unanswerable, is why this one industry is entitled to be above the law that applies to every other segment of society. I do not believe it should be, or is. Therefore I dissent.

Broussard, J., concurred.

Appellant's petition for a rehearing was denied October 13, 1988. Mosk, J., and Broussard, J., were of the opinion that the petition should be granted.

The effective date of this order and the date our decision in this cause becomes final is October 17, 1988.