**SAFEWAY, INC., Plaintiff,**

**v.**

**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, Defendant.**

**NO. C–88–3440 DLJ.**

United States District Court, N.D. California.

Oct. 22, 1992.

John J. Dacey, of McKenna & Fitting, San Francisco, Cal., for plaintiff.

David B. Paynter, of Lewis, D'Amato, Brisbois & Bisgaard of San Francisco, Cal., and Jonathan Thier, of Cahill, Gordon & Reindel, New York, for defendant.

## ORDER

JENSEN, District Judge.

On September 30, 1992, this Court heard defendant's motion for summary judgment on specified issues. John J. Dacey of McKenna & Fitting appeared for plaintiff. David B. Paynter of Lewis, D'Amato, Brisbois & Bisgaard and Jonathan Thier of Cahill, Gordon & Reindel appeared for defendant. Having considered the papers submitted, the arguments of counsel, and the applicable law, the Court GRANTS defendant's motion for summary judgment on the specified issues for the following reasons.

### I. BACKGROUND

This case involves an insurance perspective on the corporate takeover wars fought in the mid-to-late 1980s. Safeway Stores, Inc. ("Safeway") brings this action for indemnification against its insurer, National Union Fire Insurance Company ("National Union"), who from May 29, 1986 through May 29, 1987, provided Safeway with a directors' and officers' liability insurance policy. The policy included direct coverage for directors and officers as well as a corporate reimbursement clause covering Safeway for expenditures incurred through indemnification by Safeway for the defense and settlement of claims against its officers and directors. Safeway brought the action seeking approximately $13 million that Safeway allegedly incurred in settling lawsuits brought against its directors and officers in 1986. These shareholder lawsuits arose in connection with Safeway's acquisition by Kravis, Kohlberg & Roberts ("KKR") in a leveraged buy out.

A. *The Takeover of Safeway and the Shareholder Actions*

In response to a hostile takeover attempt, Safeway invited KKR to become its "white knight." On July 25, 1986, Safeway's directors entered into a merger agreement with KKR. Pursuant to the agreement, KKR would buy 73% of Safeway's public stock, at $69.00 a share, be-

fore the end of August 1986, with the actual merger to take place in November 1986. The merger agreement authorized Safeway to declare a quarterly dividend of up to $.425 per share prior to the consummation of the merger. This amount represented Safeway's "regular" [1] quarterly dividend payment which was scheduled to be paid on September 30, 1986 to shareholders of record as of September 2, 1986. In addition, Safeway agreed to be liable for a "breakup penalty" of $45 million in the event that KKR lost out to another bidder and the KKR/Safeway merger did not take place. KKR created a special affiliate, "SSI," to purchase Safeway shares and facilitate the transaction.

Shortly after the announcement of the proposed takeover agreement, six class action lawsuits were filed by Safeway shareholders: four in California state court, one in Maryland state court, and one in federal court in this district ("shareholder actions"). Included as defendants in the shareholder actions were Safeway, Safeway's directors, KKR, KKR individual defendants, SSI, and Merrill Lynch, which acted as Safeway's consultant for the merger. The shareholder actions alleged generally that Safeway's officers and directors breached duties to the corporation and its shareholders by approving a tender offer for and acquisition of Safeway by KKR. The actions alleged that Safeway and KKR aided and abetted the breach, in part, through negotiation of the $45 million breakup penalty. The gravamen of the shareholder actions was that the shareholders would receive inadequate consideration for their stock. The shareholder actions sought to enjoin the KKR buy out or, in the alternative, to recover damages and attorneys' fees. Safeway notified National Union of these pending lawsuits on August 12, 1986.

On August 19, 1986, the parties to the shareholder actions entered into a tentative settlement agreement memorialized in a "Memorandum of Understanding." The settlement agreement provided for a modification to the existing merger agreement between Safeway and KKR. Under the original terms of that merger agreement, KKR had agreed to buy 73% of Safeway's public stock at $69 per share before the end of August 1986. Safeway was authorized to issue its regular quarterly dividend of $.425 per share ($26.2 million) to be paid on September 30, 1986 to shareholders of record as of September 2, 1986.

As a result of the settlement agreement, Safeway agreed to advance the record date for a portion of the dividend and to provide for two separate record dates for payment of the Fall 1986 dividend. The August 19, 1986 Memorandum of Understanding provided that the shareholders would receive approximately a $11,500,000 dividend payable by Safeway in September 1986.

Under the terms of the initial merger agreement, KKR, as shareholder of record of 73% of Safeway stock on September 2, 1986, would have received 73% of the entire $26.2 million quarterly dividend, amounting to $19.1 million. Pursuant to the merger agreement as modified by the settlement agreement, KKR would acquire its 73% of Safeway stock after the first record date for payment of dividends and would therefore receive 73% of only the later $10.5 million dividend, amounting to $7.6 million. As a result of the settlement agreement, KKR gave up $11.5 million of dividends it would have received under the original merger agreement and shareholders of record other than KKR, including shareholder plaintiffs, received the $11.5 million in dividends. The bottom line result was to add $11.5 million to the takeover price to be paid by KKR to Safeway.

The Memorandum also provided that the parties would attempt in good faith to execute appropriate settlement documents and to obtain approval of the settlement by the respective courts. Consummation of the settlement was made subject to the completion of discovery to the shareholder plain-

---

1. In each of the four quarters immediately preceding the merger agreement (Fall 1985—Fall 1986) Safeway had issued a dividend of $.425 per share. At that time Safeway had about 60 million shares outstanding, resulting in quarterly dividend payments of approximately $26 million.

tiffs' satisfaction. Thus the Memorandum was not binding on any party if plaintiffs' counsel determined upon discovery that the settlement was not fair and reasonable or if the respective courts failed to approve the settlement. Finally, the Memorandum provided that the defendants would not oppose an application by the shareholder plaintiffs for an award of their attorneys' fees in an amount not to exceed $1,725,000 and to pay such fees as were awarded by the court.

The events contemplated by the Memorandum took place as planned. The Safeway board of directors authorized issuance of the split dividend on August 19, 1986, KKR acquired its 73% share of stock on August 29, 1986, and the quarterly dividend was paid on September 30, 1986 to shareholders of record on August 28, 1986 and September 2, 1986. Inasmuch as defendant directors were owners of Safeway stock on August 28, 1986 they received a portion of the $11.5 million early dividend payment provided for in the settlement agreement. Safeway notified National Union of the settlement agreement, including the split dividend provision, on August 29, 1986.

The terms of the Memorandum were ultimately memorialized in a formal Stipulation and Agreement of Compromise and Settlement ("Stipulation"), dated May 15, 1987. Pursuant to the Stipulation, the California state court actions were consolidated in a single action. On September 16, 1987, the Alameda County Superior Court entered an order confirming the terms of the settlement for the California state court shareholder actions as "fair, reasonable and adequate." On November 16, 1987 Safeway paid $1,784,477.15 to counsel for the shareholder plaintiffs in accordance with the order of the Alameda County Superior Court.

## B. *The National Union Policy*

The National Union insurance policy ("Policy") issued to Safeway includes a Corporate Reimbursement Section that provides, in pertinent part, as follows:

This policy shall ... pay on behalf of the Company ... Loss (as herein defined) arising from any claim or claims which are first made during the policy period against ... a Director or Officer (as herein defined) of the Company, by reason of any Wrongful Act ... but only when the Directors or Officers ... shall have been indemnified by the Company for damages, judgments, settlements, costs, charges or expenses incurred in connection with the defense of any action ... to which the Directors or Officers may be a party ... pursuant to law, common or statutory, or the Charter or By-Laws of the Company duly effective under such law which determines and defines such rights of indemnity.

Policy, "Corporation Reimbursement," ¶ 1 (attached as Ex. A to Paynter Declaration, Aug. 27, 1992).

The policy defines "loss" as:

any amount the Company shall have paid to a Director or Officer as indemnity for a claim or claims ... whether actual or asserted and ... shall include damages, judgments, settlements, costs, charges and expenses incurred in the defense of actions ... for which payment may be required or permitted according to applicable law, common or statutory, or under provisions of the Company's Charter or By-Laws effective pursuant to such law[.]

*Id.,* ¶ 2(c).

On February 1, 1988 Safeway made a claim on the policy for defense costs of $342,000 and $1.78 million for plaintiffs' attorneys fees in connection with the settlement of the shareholder actions. On May 27, 1988 National Union refused to pay the claim, contending that the settlement payments reflected uncovered disbursements and that Safeway failed to allocate, as required by the insurance contract, between expenses paid on behalf of covered directors and officers, and those paid on behalf of parties not covered by the contract.

On October 26, 1988 Safeway filed the instant action, stating for the first time a claim for the $11.5 million dividend payment made in accordance with the provi-

sions of the settlement agreement. Safeway also sought indemnification for defense costs, amounting to $342,000,[2] and the $1.78 million payment for the shareholders' attorneys' fees. Safeway further claimed that National Union acted in bad faith in denying Safeway's claim.

## C. *March 31, 1992 Order*

On March 31, 1992, this Court issued an Order deciding Safeway's motion for summary judgment on various issues arising from this lawsuit and defendant National Union's motion for summary judgment on a single issue: Whether or not Safeway's claim that its $11.5 million dividend of August 28, 1986 is a "loss," within the meaning of National Union's insurance policy.[3] *Safeway, Inc. v. National Union Fire Ins. Co.,* No. C–88–3440–DLJ (N.D.Cal. Mar. 31, 1992) ("March 31, 1992 Order"). The Court ruled that plaintiff's payment of the $11.5 million dividend was not a "loss" under the policy.[4] The Court also granted plaintiff's motions for summary judgment on the following issues:

1.  The shareholder actions alleged "wrongful acts" within the meaning of the policy.

2.  Payment of plaintiff's attorneys' fees in the underlying shareholder actions constituted "loss" within the meaning of the policy.

3.  Costs incurred in defending the shareholder actions constituted "loss" within the meaning of the policy.

4.  Plaintiff gave written notice of the shareholder actions in compliance with the policy.

5.  The policy exclusions in paragraphs 4(a), 4(b), and 4(d) do not exclude coverage for claimed losses.

The Court denied plaintiff's motion for summary judgment on its claims that no allocation of the amount of any claimed loss is required and that defendant breached its duty of good faith and fair dealing.

## D. *The Present Motion For Summary Judgment*

Now National Union moves for partial summary judgment on the following issues: (1) Safeway's claim for breach of good faith and fair dealing; (2) Safeway's claim under California Insurance Code § 790.-03(h); and (3) Striking Safeway's prayer for punitive damages.

## II. SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, a district court may grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

Recognizing that summary judgment motions can contribute significantly to the resolution of litigation when there are no factual issues, the Supreme Court and the Ninth Circuit have established the following standards for consideration of such motions: "If the party moving for summary judgment meets its initial burden of identifying for the court those portions of the materials on file that it believes demonstrates the absence of any genuine issues of material fact," the burden of production then shifts so that "the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, *'specific facts* showing that there is a genuine issue for trial.'" *T.W. Elec. Serv., Inc. v. Pacific Elec. Con-*

---

**2.** Safeway has filed an amended complaint reducing this amount to $228,398.12. Safeway says that the reduction is due to its discovery that over $113,000 of the cost bill was attributable to billings for services rendered to KKR rather than Safeway.

**3.** This issue was also included in Safeway's motion.

**4.** The Order ruled that a factual issue still exists as to the appropriate allocation of the approximately $2 million covered "loss" occasioned by Safeway's indemnification of directors' and officers' costs and attorneys' fees. March 31, 1992 Order at 20, 24.

*tractors Ass'n,* 809 F.2d 626, 630 (9th Cir. 1987) (quoting Fed.R.Civ.P. 56(e) (emphasis added) and citing *Kaiser Cement Corp. v. Fischbach & Moore, Inc.,* 793 F.2d 1100, 1103–04 (9th Cir.), *cert. denied,* 479 U.S. 949, 107 S.Ct. 435, 93 L.Ed.2d 384 (1986) and *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)). With respect to these specific facts offered by the non-moving party, the court does not make credibility determinations or weigh conflicting evidence, and is required to draw all inferences in a light most favorable to the non-moving party. *T.W. Elec. Serv.,* 809 F.2d at 630–31 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–88, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

Rule 56(c) nevertheless requires this Court to enter summary judgment, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552. The mere existence of a scintilla of evidence in support of the nonmoving party's position is insufficient: "[T]here must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). This Court thus applies to either a defendant's or plaintiff's motion for summary judgment the same standard as for a motion for directed verdict: "[W]hether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.*

### III. DISCUSSION

#### A. *Breach of Good Faith and Fair Dealing*

Safeway alleges that National Union breached its duty of good faith and fair dealing. As a basis for this "bad faith" claim, Safeway alleges that National Union failed to properly investigate the shareholder actions, failed to properly address the allocation issue, and denied coverage without a proper basis. National Union denies any wrongdoing and moves for summary adjudication on this cause of action.

Under California law, all insurance contracts contain an implied covenant of good faith and fair dealing. *Egan v. Mutual of Omaha Ins. Co.,* 24 Cal.3d 809, 818, 169 Cal.Rptr. 691, 620 P.2d 141 (1979); *Hanson v. Prudential Ins. Co. of America,* 783 F.2d 762, 766 (9th Cir.1985). This implied covenant requires each contracting party to refrain from engaging in conduct that injures the right of the other to receive the benefits of the contract. *Id.* An insurer may breach this covenant when it fails to properly investigate its insured's claim. *Id.* 24 Cal.3d at 817, 169 Cal.Rptr. 691, 620 P.2d 141; *Hanson,* 783 F.2d at 766. An insurer may also breach the covenant when it refuses, without proper cause, to reimburse its insured for a loss covered by the policy. *Neal v. Farmers Ins. Exch.,* 21 Cal.3d 910, 920, 148 Cal.Rptr. 389, 582 P.2d 980 (1978).

#### 1. *Investigation of the Shareholder Actions*

Plaintiff alleges that National Union failed to properly investigate the shareholder actions which precipitated Safeway's insurance claim. Safeway gave notice to National Union of the shareholder actions on August 12, 1986. By its own admission, National Union did not investigate or respond to Safeway until December 10, 1986. Defendant's Statement of Disputed Facts in Support of Summary Judgment, Sept. 23, 1992, at 4.

As stated above, an insurer may breach the covenant of good faith and fair dealing when it fails to properly investigate its insured's claim. *Egan,* 24 Cal.3d at 817, 169 Cal.Rptr. 691, 620 P.2d 141; *Hanson,* 783 F.2d at 766. Safeway argues that National Union has an obligation to investigate prior to acceptance by the court of the proposed settlement to ensure that such a settlement is fair and reasonable. Safeway asserts that defendant's delay in initiating investigation and its failure to monitor discovery by the shareholder plaintiffs pro-

vides evidentiary support for its bad faith claim.

However, despite Safeway's argument, even assuming the existence of these facts, they do not satisfy the evidentiary burden Safeway must meet to establish its bad faith claim for failing to investigate. National Union was not requested to take any action or indemnify Safeway until after the court-approved settlement. Delay after that settlement might give rise to bad faith, but National Union is not required to participate in some way in the shareholder actions before such a settlement occurs. Indeed, defendant was simply placed on notice that Safeway was being sued and might seek indemnity from National Union. Defendant then acknowledged the suits and informed Safeway to notify it of further developments. *See* Paynter Declaration, Sept. 23, 1992, Ex. B (Dec. 10, 1986 letter). No need existed for National Union to investigate until a claim was made and a claim could not be made until the suits were settled. Safeway identifies National Union's lack of action, but does not identify any action which could have affected the shareholder lawsuits, or that the lack of action did affect the settlement in any way. Under such circumstances, National Union's lack of investigation and lack of action before Safeway submitted its claim cannot support a finding of bad faith in this case.

### 2. *Allocation*

■ This Court's March 31, 1992 Order stated that "[g]enuine issues of fact must be resolved to determine the appropriate allocation of any covered loss from defense costs. The insurance policy requires an allocation analysis." March 31, 1992 Order at 20. Thus, although the shareholder plaintiffs' fees of $1,784,477.15 and Safeway's costs in defending the shareholder suits of $228,398.12 [5] are recoverable, the expenses must be allocated between those costs expended on behalf of the uncovered parties (KKR/Safeway) and the covered parties (Safeway's officers and directors).

Although the allocation issue directly impacts Safeway's contract claim (not at issue in this Order), it may also be relevant to Safeway's bad faith claim.

Safeway contends that its proof shows that National Union has yet to exercise its best efforts to determine a fair and proper allocation.

The insurance policy provides:

With respect to the settlement of any claim made against the Company and the Insured, the Company and the Insureds and the Insurer agree to use their best efforts to determine a fair and proper allocation of the settlement amount as between the Company and the Insureds.

Paynter Declaration, Aug. 27, 1992, Ex. A, at 3, ¶ 6(b).

Safeway claims that National Union's "best efforts" duty under the policy is independent of any conduct by Safeway, and adds that "any ambiguity in an insurance policy's terms must be construed broadly and most favorably to protect the insured." *Gray v. Zurich Ins. Co.*, 65 Cal.2d 263, 269, 54 Cal.Rptr. 104, 419 P.2d 168 (1966). Here, however, the contract seems reasonably clear as to the fact that both parties are to use their best efforts in determining the proper allocation. The question for this motion, nevertheless, is whether National Union used its best efforts to allocate.

As National Union correctly states in its reply brief, Safeway has failed to exercise what could be termed their "best efforts" to allocate. Reply Memorandum in Support of Summary Judgment, Sept. 23, 1992, at 5. In fact, Safeway has denied any need to allocate throughout this litigation. This motion does not purport to examine Safeway's conduct, however its refusal to allocate or suggest a proper allocation does place National Union's conduct in perspective.

National Union did make "efforts" to resolve the allocation issue between the parties. First, National Union informed Safeway of the need to allocate early in

---

**5.** As already noted, this amount is less than Safeway's original claim, as Safeway has al-

ready acknowledged that a portion of that cost is properly allocated to KKR.

their dealings and prior to the start of this litigation. *See* Paynter Declaration, Aug. 27, 1992, Ex. B, at 3. Second, National Union did propose a hypothetical allocation based upon an apportionment premise. This proposal indicated National Union's willingness to allocate and invited Safeway to either respond or offer an counter-proposal. *See* Paynter Declaration, Aug. 27, 1992, Ex. D, at 3. As already indicated, Safeway refused to allocate and did not yield from its position that allocation was unnecessary. *See, e.g.,* Paynter Declaration, Aug. 27, 1992, Ex. E; Ex. H (Safeway's First Amended Complaint, at 12:17–22 ["NATIONAL UNION has made oppressive and unreasonable demands as a precondition to coverage. These demands include, but are not limited to, the allocation of defense costs between the defense of directors and officers in the Shareholder Claims and the defense of SAFEWAY. Such allocation is unnecessary ..."]). However, this Court has ruled that allocation was necessary. *See* March 31, 1992 Order at 20.

Safeway argues that although National Union proposed an allocation, it failed to provide an articulated basis for their proposal. This failure to articulate, Safeway claims, establishes that National Union did not make the "best efforts" required by the policy. However, this argument proves too much. A lack of articulation cannot be the basis of bad faith in this case. Both parties were required to use their best efforts to allocate. National Union proffered a proposed allocation. If Safeway was unsatisfied by the lack of an articulated basis for the proposal, it could have simply asked for an explanation or issued a counter-proposal at the time. Safeway's steadfast refusal to allocate causes its bad faith argument to ring hollow. The evidentiary submission by Safeway is not sufficient to support a finding that National Union acted with any bad faith in its efforts to allocate.

3. *Denial of Coverage and Withholding of Benefits*

Plaintiff also claims that defendant's denial of coverage and refusal to pay Safe-way its benefits provided under the insurance contract demonstrate National Union's bad faith.

The covenant of good faith and fair dealing may be breached when the insurer refuses, without proper cause, to reimburse its insured for a loss covered by the policy. *Neal v. Farmers Ins. Exch.,* 21 Cal.3d 910, 920, 148 Cal.Rptr. 389, 582 P.2d 980 (1978). However, the mere denial of benefits does not demonstrate bad faith. *Hanson v. Prudential Insurance Co. of America,* 783 F.2d 762, 766 (9th Cir.1985) (applying California law). Where a disputed insurance policy involves a "genuine issue concerning legal liability," the insurer's refusal to pay claims cannot, as a matter of law, constitute bad faith. *Safeco Ins. Co. of America v. Guyton,* 692 F.2d 551, 557 (9th Cir.1982) (applying California law).

National Union claims that, as a matter of law, it had a reasonable basis to refuse to pay Safeway's claim. Certainly National Union's refusal to pay the $11.5 million dividend, which this Court ruled is not a covered "loss," cannot be a basis for Safeway's bad faith claim. *See Blake v. Aetna Life Ins. Co.,* 99 Cal.App.3d 901, 924, 160 Cal.Rptr. 528 (1979) (duty of good faith does not require an insurer to "dissipate its reserves through the payment of meritless claims").

Safeway still claims over $2 million under the insurance policy. However, simple rejection of this claim cannot be the basis of Safeway's bad faith claim either. This Court has already indicated that allocation was necessary for this remaining amount. *See* March 31, 1992 Order and discussion above. National Union does not owe Safeway 100% of this claim and cannot be said to have acted in bad faith for refusing to pay 100% of this remaining amount. Defendant was correct in advocating allocation and is not required to pay an amount greater than what it owes.

As stated, National Union's denial of the $11.5 million dividend was correct. Moreover, the shareholder plaintiffs' attorneys' fees and costs are related to the dividend and a refusal to pay these fees and costs,

which are subject to allocation, was based on genuine issues as to coverage, was not unreasonable, and cannot support plaintiff's bad faith cause of action. Accordingly, defendant's summary judgment motion on plaintiff's cause of action for the breach of the covenant of good faith and fair dealing is granted.

### B. *California Insurance Code § 790.-03(h)*

Safeway's second cause of action in its first amended complaint is for violation of the California insurance code. In particular, Safeway claims that National Union has committed wrongful acts in violation of California Insurance Code § 790.03(h). National Union denies any wrongdoing and moves for summary judgment on this cause of action.

California Insurance Code § 790.03 provides, in relevant part:

> The following are hereby defined as unfair methods of competition and unfair and deceptive acts or practices in the business of insurance.
>
> \*     \*     \*     \*     \*     \*
>
> (h) Knowingly committing or performing with such frequency as to indicate a general business practice any of the following unfair claims settlement practices:
> (1) Misrepresenting to claimants pertinent facts or insurance policy provisions relating to any coverages at issue.
> (2) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies.

> (3) Failing to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under insurance policies.
> (4) Failing to affirm or deny coverage of claims within a reasonable time after proof of loss requirements have been completed and submitted by the insured.
> (5) Not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear.
>
> \*     \*     \*     \*     \*     \*
>
> (13) Failing to provide promptly a reasonable explanation of the basis relied on in the insurance policy, in relation to the facts or applicable law, for the denial of a claim or for the offer of a compromise settlement.

Cal.Ins.Code § 790.03 (West Supp.1992).

Section 790.03(h) simply codifies the common law tort of "the implied covenant of good faith and fair dealing as applied to insurance." *Kelly v. Farmers Ins. Exch.*, 194 Cal.App.3d 1, 6, 239 Cal. Rptr. 259 (1987); *see also Richardson v. GAB Business Services, Inc.*, 161 Cal. App.3d 519, 524, 207 Cal.Rptr. 519 (1984). For the same reasons that Safeway's bad faith claim fails, Safeway's section 790.-03(h) claim must also fail. Safeway relies on the same facts for both its common law and statutory bad faith claims. Because the common law claim fails, so must the statutory claim. Therefore, defendant's summary judgment motion for the section 790.03(h) cause of action is also granted.[6]

---

**6.** Defendant raises an interesting additional argument in favor of terminating the section 790.-03(h) claim. Defendant argues that Safeway's statutory claim must be dismissed because it is a third-party claim. National Union contends that if Safeway's claim for plaintiffs' attorneys' fees is characterized as a third-party claim, then "Safeway's claim under the statute is barred because there has been no 'conclusive judicial determination' of liability in the Shareholder Actions." Reply Memorandum of Points and Authorities in Support of Summary Judgment, Sept. 23, 1992, at 17.

Defendant is correct in characterizing Safeway's claim for shareholder plaintiffs' attorneys' fees as third party. The difference between first and third party claims has been described as

follows: "If the insured is seeking coverage against *loss or damage sustained by the insured,* the claim is first party in nature. If the insured is seeking coverage against *liability of the insured to another,* the claim is third party in nature." *Garvey v. State Farm Fire & Casualty Co.*, 48 Cal.3d 395, 399 n. 2, 257 Cal.Rptr. 292, 770 P.2d 704 (1989) (emphasis in original). Here, Safeway seeks coverage against its liability to shareholder plaintiffs. Thus, this part of Safeway's claim against National Union is a third party claim.

The next thrust of defendant's argument is that, in third party cases, there must be a conclusive judicial determination of the "insured's liability before the third party can succeed in an action against the insurer under section 790.03."

## C. *Punitive Damages*

Defendant's motion to strike plaintiff's prayer for punitive damages is largely academic. As this Court grants summary judgment on plaintiff's second and third causes of action for breach of the covenant of good faith and fair dealing and violation of California Insurance Code section 790.-03(h), respectively, no prayer for punitive damages survives. Plaintiff requested punitive or exemplary damages in connection with only their second and third causes of action. *See* Paynter Declaration, Aug. 27, 1992, Ex. H, at 14–15 (Plaintiff's First Amended Complaint). Now that those two claims have been resolved by summary judgment, no prayer for punitive damages remains.

## IV. CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

1. Defendant's motion for summary judgment on plaintiff's third cause of action for breach of the duty of good faith and fair dealing is GRANTED;

2. Defendant's motion for summary judgment on plaintiff's second cause of action for violation of California Insurance Code § 790.03(h) is GRANTED;

3. Defendant's motion for summary judgment on the issue that defendant is not liable for any punitive damages is GRANTED.

IT IS SO ORDERED.

---

*Moradi–Shalal v. Fireman's Fund Ins. Cos.,* 46 Cal.3d 287, 306, 250 Cal.Rptr. 116, 758 P.2d 58 (1988). Moreover, settlement is an insufficient conclusion to the underlying action. *Id.* In other words, in third party cases, a section 790.03 action cannot succeed if the underlying action was settled. Defendant correctly notes that the underlying shareholder actions were settled, thus concluding that Safeway's statutory claim on those plaintiffs' attorneys' fees must fail.

Safeway focuses on the *Moradi* language that a conclusive determination must exist before a "third party" can prevail in an action against the insurer. It argues that the "third party" in this case would be the shareholder plaintiffs, not Safeway itself. Thus, the conclusive judicial determination standard raised in *Moradi* would not apply.

As summary judgment is granted for this statutory claim on other grounds, the Court need not address the merits of this debate. However, it is apparent that this is an issue California courts should examine and resolve when they have an opportunity to do so.