Filed 6/30/23  Pierson v. CSAA Insurance Services CA3

NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Amador)

----

| | |
|---|---|
| RAYMOND H. PIERSON III, | C091099 |
| Plaintiff and Appellant, | (Super. Ct. No. 18CVC10813) |
| v. | |
| CSAA INSURANCE SERVICES, INC. et al., | |
| Defendants and Respondents. | |

Following an incident in which Phyliss M. Rushing allegedly drove her car into an unoccupied medical office operated by plaintiff Raymond H. Pierson III, M.D., plaintiff filed a complaint asserting causes of action against Rushing and her insurer, defendant CSAA Insurance Service, Inc. and CSAA Insurance Exchange (hereafter CSAA).  The complaint alleged that both CSAA and Rushing were liable for negligence and intentional infliction of emotional distress (IIED), and it alleged that CSAA was liable for acting in bad faith.  Plaintiff sought compensatory damages and, with respect to his IIED claim, punitive damages.

1

CSAA demurred to the complaint; it argued in part that plaintiff lacked standing to bring his claims against it because he was a nonparty to the insurance contract. The trial court agreed with CSAA and sustained the demurrer without leave to amend.

Plaintiff appeals. He contends he had standing to sue CSAA because he was a third party beneficiary under the insurance contract and because CSAA owed him a duty to attempt to settle his claim in good faith. He further argues that CSAA acted in bad faith by refusing to provide him with the policy limits and declaration pages of Rushing's insurance policy, and that his allegations related to CSAA's conduct were sufficient to support his request for punitive damages.

We conclude plaintiff lacked standing to sue CSAA, and we reject plaintiff's attempt to establish an insurer's duty to an injured third party to negotiate with the third party because the law clearly states that no such duty exists. We also reject plaintiff's remaining claims; the statute he relies upon to establish his bad faith claim does not provide for a private cause of action, and, in the absence of a viable claim against CSAA, he necessarily failed to plead facts sufficient to support the imposition of punitive damages. Finally, we observe that plaintiff fails to argue on appeal that there is a reasonable possibility the defect in his pleading could be cured by amendment, and therefore he has failed to satisfy his burden to make such a showing. Accordingly, we will affirm the judgment.

## FACTS AND PROCEEDINGS

CSAA issued an automobile insurance policy (insurance contact) to Rushing, which included an indemnity clause stating in relevant part that CSAA "will pay damages, other than punitive or exemplary damages, for which any insured person is legally liable because of bodily injury or property damage arising out of the . . . use of a

car."[1]  The insurance contract also included a provision for medical payments coverage, which provided in relevant part:  "[CSAA] will pay reasonable expenses incurred within one year from the date of accident *by an insured person* who sustains bodily injury as a result of an accident covered under this Part for necessary medical, surgical, X-ray, and dental treatment, including prosthetic devices, eyeglasses, and hearing aids and necessary ambulance, hospital, professional nursing, and funeral costs."  (Italics added.)

On October 9, 2018, plaintiff filed a complaint against Rushing and CSAA.  The complaint asserted that on October 10, 2016, CSAA's insured, Rushing, drove her car into plaintiff's unoccupied medical office, causing plaintiff to suffer economic losses and personal injury.[2]  The complaint asserted causes of action against both CSAA and Rushing, including:  general negligence (first cause of action); negligent operation of a motor vehicle--business disruption (second cause of action); negligence--personal injury (third cause of action); and negligent business interference with projected economic advantage (fifth cause of action).  As to plaintiff's negligence claims, the complaint alleged that Rushing was negligent, that CSAA was vicariously liable for Rushing's negligent conduct, and that CSAA negligently caused disruption of plaintiff's medical practice by refusing in bad faith to make a reasonable settlement offer.

Plaintiff also asserted a cause of action against Rushing and CSAA for IIED (fourth cause of action), which alleged that CSAA was vicariously liable for Rushing's

---

[1]  Plaintiff contends that CSAA has only disclosed a generic version of the CSAA insurance policy, but CSAA's counsel stated in a declaration submitted with CSAA's reply in support of its demurrer that the policy is "a copy of the relevant portions of the automobile policy issued by [CSAA] to [Rushing] that was in force and effect at the time of the subject incident."

[2]  The complaint alleged plaintiff aggravated a preexisting shoulder injury when vacating the office and that plaintiff and his staff suffered pulmonary injuries from breathing air contaminated by construction dust and debris.

3

infliction of emotional distress on plaintiff, and that CSAA's bad faith refusal to resolve plaintiff's claim caused him emotional distress. Plaintiff sought punitive damages related to that claim.

Plaintiff's sixth cause of action for bad faith alleged that CSAA engaged in unfair claims settlement practices (Ins. Code, § 790.03) by failing to attempt to resolve his claims in good faith. The complaint acknowledged that plaintiff could not pursue that claim until he had secured a judgment against Rushing.

Following unsuccessful attempts to meet and confer, CSAA filed an amended demurrer to the complaint and a motion to strike punitive damages. The demurrer argued plaintiff lacked standing to bring his lawsuit against CSAA because he was not a party to the insurance contract. CSAA also argued that plaintiff's negligence claims failed because it had no duty to plaintiff to investigate his claim, plaintiff could not bring a bad faith claim against CSAA because he was not a party to the insurance contract, the complaint failed to allege sufficient facts regarding a duty of care CSAA owed to plaintiff or how it breached that duty, and plaintiff's IIED claim failed because the CSAA's conduct did not satisfy the "outrageous" standard required to support the claim as a matter of law.

Plaintiff opposed the demurrer and motion to strike. He argued that he had standing to bring his claims against CSAA because he was a third party beneficiary of the insurance contract and because it was possible that the insurance contract included a medical payment provision requiring payment of plaintiff's medical expenses not contingent on fault.[3] Regarding his negligence claims, he argued CSAA owed him a duty of reasonable care "to get his practice up and running again," and it breached that duty by failing to adequately attempt to resolve his claims. Finally, he asserted that the

---

[3] Plaintiff asserted that CSAA's attorney had failed to provide the applicable insurance contract.

4

"exceptional nature and extent of the financial and physical harm" he suffered were sufficient to overcome demurrer to his IIED claim, and the facts alleged in the complaint were sufficient to support the imposition of punitive damages.

The trial court issued a detailed tentative ruling sustaining CSAA's demurrer without leave to amend for failure to state a cause of action. (Code Civ. Proc., § 430.10, subd. (e).) The court concluded plaintiff lacked standing to sue CSAA because a liability insurer's duties flow to its insured alone, and a third party such as plaintiff may not bring a direct action against an insurance company except where there has been an assignment of rights by, or a final judgment against, the insured. (Citing *Shaolian v. Safeco Insurance Co.* (1999) 71 Cal.App.4th 268, 271.) The court further concluded that an insurer cannot be charged with negligence in connection with its investigation of any insurance claim (citing *Adelman v. Assoc. Intern. Ins. Co.* (2001) 90 Cal.App.4th 352, 365-366), and that plaintiff could not sustain a cause of action for bad faith because he was not a party to the insurance contract (citing *Moradi-Shalal v. Fireman's Fund Ins. Co.* (1988) 46 Cal.3d 287). The court sustained CSAA's demurrer to plaintiff's IIED claim on the basis that CSAA's conduct was not sufficiently outrageous as a matter of law. The court denied leave to amend because plaintiff failed to satisfy his burden to show in what manner he could amend or how the amendment would change the legal effect of his pleading. (Citing *Goodman v. Kennedy* (1976) 18 Cal.3d 335.) The court noted its ruling rendered moot CSAA's motion to strike punitive damages.

The trial court adopted its tentative ruling following a hearing, and it entered the dismissal of the complaint against CSAA. Notice of entry of judgment or order was served on August 21, 2019.

Plaintiff timely filed notice of appeal. A panel of this court granted plaintiff's request for permission to appeal, which he was required to file as a vexatious litigant. The case was assigned to the current panel on February 28, 2023, and it was fully briefed in March 2023.

# DISCUSSION

## I

### *Standard of Review*

"A demurrer tests the sufficiency of the complaint as a matter of law; as such, it raises only a question of law." (*Osornio v. Weingarten* (2004) 124 Cal.App.4th 304, 316.) Thus, the standard of review on appeal is de novo. (*Ibid.*)

A general demurrer is appropriate where the complaint "does not state facts sufficient to constitute a cause of action." (Code Civ. Proc., § 430.10, subd. (e).) "In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules. 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

"To satisfy that burden on appeal, a plaintiff 'must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading.' [Citation.] The assertion of an abstract right to amend does not satisfy this burden. [Citation.] The plaintiff must clearly and specifically set forth the 'applicable substantive law' [citation] and the legal basis for amendment, i.e., the elements of the cause of action and authority for it. Further, plaintiff must set forth factual allegations that sufficiently state all required elements of that cause of action. [Citations.]

6

Allegations must be factual and specific, not vague or conclusionary." (*Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 43-44.)

"While negligence is ordinarily a question of fact, the existence of duty is generally one of law. [Citations.] Thus, a demurrer to a negligence claim will properly lie only where the allegations of the complaint fail to disclose the existence of any legal duty owed by the defendant to the plaintiff." (*Osornio v. Weingarten*, *supra*, 124 Cal.App.4th at p. 316.)

## II

### *Standing*

The trial court concluded plaintiff lacked standing to sue CSAA because he was not a party to the insurance contract, and there had been no assignment of rights by, or judgment against, the insured. Plaintiff recognizes that he was not a party to the insurance contract, but he contends he had standing to sue CSAA because the insurance contract was intended to compensate parties injured by the insured's negligent acts, and therefore he was a third party beneficiary of the insurance contract. As we will explain, we disagree.

A. *Applicable Law*

Standing is related to the requirement contained in Code of Civil Procedure section 367 that "[e]very action must be prosecuted in the name of the real party in interest, except as otherwise provided by statute." The real party in interest is generally the person who has the right to sue under the substantive law. (*Estate of Bowles* (2008) 169 Cal.App.4th 684, 690.) "A party who is not the real party in interest lacks standing to sue because the claim belongs to someone else." (*Ibid.*) "Where someone other than the real party in interest files suit, the complaint is subject to a general demurrer." (*Ibid.*; Code Civ. Proc., § 430.10.)

Injured third parties typically lack standing to sue the insurer of an insured tortfeasor. " ' "[G]enerally, an insurer may not be joined as a party-defendant in the

7

underlying action against the insured by the injured third party. The fact that an insurer has agreed to indemnify the insured for any judgment rendered in the action does not make the insurer a proper party. Liability insurance is not a contract for the benefit of the injured party so as to allow it to sue the insurer directly." ' " (*Royal Indemnity Co. v. United Enterprises, Inc.* (2008) 162 Cal.App.4th 194, 205; see *Shaolian v. Safeco Ins. Co.*, *supra*, 71 Cal.App.4th at p. 271 ["Because the insurer's duties flow to its insured alone, a third party claimant may not bring a direct action against an insurance company"].)

The general rule that an injured third party lacks standing to sue an insurer of the tortfeasor extends to causes of action for breach of an insurer's duty to settle a claim made by an injured third party. An insurer has a duty to settle within policy limits when there is a substantial likelihood of recovery in excess of those limits, but that duty is implied in law to protect the *insured* and "does not directly benefit the injured claimant." (*Murphy v. Allstate* (1976) 17 Cal.3d 937, 941.) Accordingly, an injured third party does not have the right "to require the insurer to negotiate or settle with him prior to the establishment of the insured's liability." (*Zahn v. Canadian Indemnity Co.* (1976) 57 Cal.App.3d 509, 514.) Thus, "as a third party who is not in privity of contract with the liability insurer (nor named as an express beneficiary of the policy), [plaintiff] would normally lack standing to sue the insurer to resolve coverage questions about a tortfeasor, such as where there has been a failure to settle a claim under the policy." (*Royal Indemnity Co. v. United Enterprises, Inc.*, *supra*, 162 Cal.App.4th at p. 205.)

There are exceptions to the general rule that a third party lacks standing to sue an insurer directly. A third party claimant may bring claims against an insurer when the third party is an assignee of the insured's claims, or when the third party has obtained a final judgment against the insured. (*Harper v. Wausau Ins. Co.* (1997) 56 Cal.App.4th 1079, 1086 (*Harper*).)

8

Additionally, as relevant to plaintiff's argument on appeal, under certain circumstances a third party claimant may sue an insurer as a third party beneficiary of the contract utilizing traditional contract principles. (*Harper*, *supra*, 56 Cal.App.4th at p. 1086.) "Under California law third party beneficiaries of contracts have the right to enforce the terms of the contract under Civil Code section 1559 which provides: 'A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it.' " (*Harper*, at p. 1086.) "A third party may qualify as a beneficiary under a contract where the contracting parties must have intended to benefit that individual and such intent appears on the terms of the agreement." (*Id.* at p. 1087.) For example, where an insurance contract provides for medical payments coverage for anyone injured by the insured with no requirement of a determination of fault, a party injured by the insured may sue the insurer as a third party beneficiary of the contract. (See *id.* at p. 1090.)

"It is well settled, however, that Civil Code section 1559 excludes enforcement of a contract by persons who are only incidentally or remotely benefited by the agreement. [Citations.] The Supreme Court has held: 'A third party should not be permitted to enforce covenants made not for his benefit, but rather for others. He is not a contracting party; his right to performance is predicated on the contracting parties' intent to benefit him.' " (*Harper*, *supra*, 56 Cal.App.4th at p. 1087.) "Generally, a policy of indemnity insurance will not inure to a third party's benefit unless the contract makes such an obligation express, and any doubt should be construed against such intent." (*American Home Insurance Company v. Travelers Indemnity Co.* (1981) 122 Cal.App.3d 951, 967.)

B. *Analysis*

Plaintiff acknowledges that he is not a party to the insurance contract, but contends he is a third party beneficiary of the contract because the parties to the insurance contract intended for the insurer to compensate injured third parties for damages incurred due to the insured's negligent conduct within the scope of the contract. But the law to the

9

contrary is clear: " ' "Liability insurance is not a contract for the benefit of the injured party so as to allow it to sue the insurer directly." ' " (*Royal Indemnity Co. v. United Enterprises, Inc.*, *supra*, 162 Cal.App.4th at p. 205.)  The mere fact that CSAA agreed to indemnify Rushing for any judgment rendered in an action does not make CSAA a proper party to a lawsuit brought by plaintiff.

Plaintiff's sixth cause of action alleged that CSAA acted in bad faith by refusing to attempt to resolve his claim, in violation of Insurance Code section 790.03.  Insurance Code section 790.03, subdivision (h) provides:  "Knowingly committing or performing with such frequency as to indicate a general business practice any of the following unfair claims settlement practices:  [¶] . . . [¶]  (5)  Not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear."  Plaintiff also argues on appeal that CSAA's claim representatives and legal counsel demonstrated "exceptional" bad faith by refusing to provide him with Rushing's insurance policy, which he contends "strongly suggests a '*blanket*' company policy to improperly deny this information to opposing parties" in violation of Insurance Code section 790.03.  However, Insurance Code section 790.03 does not create a private cause of action in favor of third party claimants. (*Moradi-Shalal v. Fireman's Fund Ins. Companies*, *supra*, 46 Cal.3d at p. 294.)  Plaintiff lacked standing to sue CSAA for violation of Insurance Code section 790.03.

Plaintiff also contends that CSAA is a proper party because Rushing's negligence has been "fully established and documented."  But while plaintiff might consider Rushing's liability to be a foregone conclusion, plaintiff has not obtained a judgment against Rushing, and her liability has not yet been established.  "[T]he insured's liability must be established independently and not in an action brought directly against the insurer and the insurer may not be joined in the action against the insured." (*Zahn v. Canadian Indemnity Co.* (1976) 57 Cal.App.3d 509, 514.)  Thus, plaintiff does not have standing to sue CSAA based on his belief that Rushing was negligent.

10

Plaintiff argues it was inappropriate for the trial court to sustain CSAA's demurrer because CSAA refused to disclose Rushing's insurance policy with the declaration page and provided only a "generic copy" of an automobile insurance policy. He speculates that a "full, complete and individualized copy of the existing insurance policy" would show that he is a third party beneficiary under the agreement. But his complaint did not allege on information and belief that the insurance contract included a provision that would make him a third party beneficiary. To survive a demurrer, plaintiff was required to plead "[a] statement of the facts constituting [a good] cause of action, in ordinary and concise language." (Code Civ. Proc., § 425.10, subd. (a).) He failed to plead the facts sufficient to survive demurrer and thus preserve his ability to later try to prove those facts by way of discovery. (See 4 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 398, pp. 537-538.) Moreover, the insurance contract CSAA submitted to the court included a provision for medical payments coverage, but the provision did not provide for medical payments coverage to injured third parties, unlike the medical payments coverage provision at issue in *Harper*, *supra*, 56 Cal.App.4th at page 1090.

Because plaintiff lacks standing to bring his claims against CSAA, we reject his argument that he appropriately requested punitive damages due to CSAA's "exceptional bad faith handling" of his claim. In the absence of standing to sue CSAA, the complaint necessarily failed to allege facts sufficient to support a prayer for punitive damages.

Finally, plaintiff's opening brief does not contend that there is a reasonable possibility the defect in his pleading can be cured by amendment. We disregard the argument he makes for the first time in his reply brief. (*Cohen v. Kabbalah Centre International, Inc.* (2019) 35 Cal.App.5th 13, 22; *Scott v. CIBA Vision Corp.* (1995) 38 Cal.App.4th 307, 322.) Accordingly, plaintiff failed to satisfy his burden of proving such reasonable possibility. (See *Blank v. Kirwan*, *supra*, 39 Cal.3d at p. 318.)

11

## III

### *Duty Of Care Under Civil Code Section 1714 and* Biakanja

Plaintiff contends he is entitled to advance claims of bad faith, negligence, physical injury, and mental distress because CSAA had a "special" relationship with him and thus owed him a duty of care. At the outset, we observe that plaintiff's argument is constrained by the law on which he purports to rely. He rests his contention on the applicability of Civil Code section 1714 and our Supreme Court's decision in *Biakanja v. Irving* (1958) 49 Cal.2d 647 (*Biakanja*), which concern the circumstances under which a duty of care is owed to an injured party in the absence of contractual privity, such that the injured party may pursue a claim for *negligence*. Accordingly, while plaintiff briefly asserts that his argument applies to his bad faith and IIED claims, the nature of his argument clearly establishes that it applies *only* to his negligence claims. In any event, as we have explained, the law is well-settled that an insurer has no duty to settle with a third party, and therefore plaintiff's arguments that he is owed a duty by CSAA lack merit.

" 'The indispensable precondition to liability founded upon negligence is the existence of a duty of care owed by the alleged wrongdoer to the plaintiff, or to a class of which plaintiff is a member.' " (*Spearman v. State Farm Fire & Cas. Co.* (1986) 185 Cal.App.3d 1105, 1110.) "In California, the 'general rule' is that people owe a duty of care to avoid causing harm to others and that they are thus usually liable for injuries their negligence inflicts. [Citation.] Under Civil Code section 1714, subdivision (a), '[e]veryone is responsible . . . for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself or herself.' " (*Southern California Gas Leak Cases* (2019) 7 Cal.5th 391, 398.)

Our Supreme Court long ago employed a checklist of factors to consider in determining whether there exists a legal duty of one party to another in the absence of a privity of contract between them. In *Biakanja*, *supra*, 49 Cal.2d 647, the defendant

12

notary public negligently prepared a will that was intended to leave the entire estate to the plaintiff, resulting in the plaintiff receiving only a fraction of what was intended under the will. The court concluded the defendant owed the plaintiff a duty of reasonable care, emphasizing that the "end and aim" of the transaction was to benefit the plaintiff and the injury to the plaintiff from the defendant's negligent actions was clearly foreseeable. (*Id.* at p. 650.) But the court recognized that would not always be true, and it clarified that "[t]he determination whether in a specific case the defendant will be held liable to a third person not in privity is a matter of policy and involves the balancing of various factors, among which are [1] the extent to which the transaction was intended to affect the plaintiff, [2] the foreseeability of harm to him, [3] the degree of certainty that the plaintiff suffered injury, [4] the closeness of the connection between the defendant's conduct and the injury suffered, [5] the moral blame attached to the defendant's conduct, and [6] the policy of preventing future harm." (*Ibid.*) The *Biakanja* test has been applied in various contexts to impose a duty of care, and liability in negligence for its breach. (See, e.g., *Lucas v. Hamm* (1961) 56 Cal.2d 583 [attorney who prepares will owes duty to both testator and intended beneficiary to complete the task in a manner that achieves testator's purposes]; *Connor v. Great Western Sav. & Loan Assn.* (1968) 69 Cal.2d 850 [construction lender owes duty to third party home buyers to discover and prevent major defects in homes where lender financed home's construction].)

Plaintiff seeks to impose onto CSAA a duty of care under *Biakanja*. He does not expressly state the nature of the duty he seeks to impose, but his analysis of the *Biakanja* factors suggests an argument that CSAA owed him a duty to settle his claim.[4] He asserts (1) the insurance contract was intended to compensate him for injuries caused by

---

[4] In his reply brief, plaintiff argues that not only did CSAA owe *him* a duty of care under *Biakanja*, but it also owed *his patients* a duty of care. Whether CSAA owed plaintiff's patients a duty of care is not before us.

13

Rushing's negligence, (2) the indefinite closure of his medical practice foreseeably caused him financial, personal, and professional injury, (3) Rushing's negligent conduct caused his damages,[5] (4) CSAA was morally blameworthy for failing to resolve his claim, and (5) imposing a duty of care onto CSAA would prevent CSAA's "morally repugnant behavior" representing "an unlawful level of extreme oppression."

The obvious and fatal flaw in plaintiff's attempt to establish a duty of CSAA to negotiate or settle his third party insurance claim is that the law is already well-settled: an insurer's duty to investigate and settle claims exists to protect the *insured*, not the third party claimant. (*Murphy v. Allstate Ins. Co.*, *supra*, 17 Cal.3d at p. 941; *Spearman v. State Farm Fire & Cas. Co.*, *supra*, 185 Cal.App.3d at p. 1110.) Indeed, as our Supreme Court recognized in *Murphy*, not only does the insurer's duty to settle not benefit the injured claimant, but the injured claimant usually *benefits* from the breach of the insurer's duty to the insured to settle because the claimant may obtain an award in excess of policy limits. (*Murphy*, at p. 941.) Thus, the " 'end and aim' " of the indemnity provision of the insurance contract was *not* to benefit plaintiff, a stranger to the insurance contract, but was instead intended to indemnify the insured. (*Murphy v. Allstate Ins. Co.*, *supra*, 17 Cal.3d at p. 941; *Royal Indemnity Co. v. United Enterprises, Inc.*, *supra*, 162 Cal.App.4th at p. 205; *Spearman v. State Farm Fire & Cas. Co.*, *supra*, 185 Cal.App.3d at p. 1110.) Accordingly, we reject plaintiff's argument that a special relationship between him and CSAA gave rise to a duty to negotiate or settle his claim.

Plaintiff raises other arguments for the first time in his reply brief. He argues that Insurance Code sections 16020 and 16021, which require automobile drivers to carry

---

[5] Notably, plaintiff does not argue here that *CSAA's* negligent conduct caused his damages, which would be required to impose liability for negligence. (See *Peredia v. HR Mobile Services, Inc.* (2018) 25 Cal.App.5th 680, 687 [elements of negligence cause of action are duty, breach of duty, proximate cause, and damages].)

evidence of financial responsibility (typically insurance), demonstrate that an insurer has a special relationship with its insured and gives rise to an insurer's duty to ensure that its insured does not injure third parties. He argues that Rushing's negligence, which he asserts was the sole factor in the destruction of his medical practice, established a special relationship between him and CSAA because CSAA was Rushing's insurer and had the financial resources to reopen his practice. Finally, he argues that "liability exists for CSAA" under *Biakanja* due to CSAA's intentional and fraudulent misrepresentation of the applicable statute of limitations. We disregard these arguments made for the first time in reply. (*Cohen v. Kabbalah Centre International, Inc.*, *supra*, 35 Cal.App.5th at p. 22; *Scott v. CIBA Vision Corp.*, *supra*, 38 Cal.App.4th at p. 322.)

## DISPOSITION

The judgment is affirmed. Respondents are entitled to their costs on appeal. (Cal. Rules of Court, rule 8.278(a).)

/s/
Duarte, J.

We concur:

/s/
Mauro, Acting P. J.

/s/
McAdam, J.*

---

* Judge of the Yolo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.